## 70995. CITY OF MARIETTA BOARD OF LIGHTS & WATER v. GEORGIA POWER COMPANY et al.
### (335 SE2d 467)

BANKE, Chief Judge.

Georgia Power Company filed a petition with the Georgia Public Service Commission seeking to prevent the City of Marietta Board of Lights and Water (hereinafter Marietta) from committing an alleged violation of the Georgia Territorial Electric Service Act (OCGA § 46-3-1 et seq.) by providing electric service to certain premises owned by Dunaway Drug Stores, Inc., which premises were alleged to have been assigned exclusively to Georgia Power under the Act. The Public Service Commission ruled in favor of Georgia Power, and that ruling was affirmed on appeal to the Superior Court of Fulton County. This appeal followed.

The factual findings made by the Public Service Commission are not in dispute. Dunaway Drug Stores, Inc., commenced construction

of an office and warehouse complex on the property in question on March 15, 1981, and Marietta began providing temporary electric service to the construction site during that same month. The location of the office and warehouse complex, both as planned and as constructed, was more than 500 feet from any existing electric line maintained by Marietta. However, subsequent to the commencement of construction, Dunaway decided to erect a small, permanent shed on the property at a location within 300 feet of an existing electric line maintained by Marietta. The Public Service Commission found as a matter of fact that the construction of this shed "resulted solely from an attempt to justify the extension and delivery of temporary and permanent electric service by Marietta to the office and warehouse complex." In June of 1981, Dunaway applied for and began receiving permanent electric service from Marietta. *Held*:

It is acknowledged by the parties that pursuant to OCGA § 46-3-5, Georgia Power was and is the "primary supplier" for the area in question and that, as a consequence, Dunaway may elect to be served by Marietta as a secondary supplier only if the newly constructed premises are "located at least partially within 300 feet of the [existing] lines of such secondary supplier . . ." OCGA § 46-3-8 (a) (2). Application of this statutory provision is governed by OCGA § 46-3-8 (f), which provides, in pertinent part, as follows: "(f) *The time at which an electric supplier, based upon the location or proximity of electric suppliers' lines as in this part provided for, shall be considered as having the right to extend and furnish, or as being restricted from extending and furnishing, service to new premises shall be the time at which written application for temporary construction or permanent service is made to any electric supplier by the consumer utilizing such premises or the time at which construction of such premises is commenced, whichever first occurs.* The location of a premises for temporary construction service shall be deemed to be the same as the location of the premises which shall require permanent service after construction." (Emphasis supplied.) The term "premises" is defined by OCGA § 46-3-3 (6), in pertinent part, as follows: " 'Premises' means the building, structure, or facility to which electricity is being or is to be furnished, provided that two or more buildings, structures or facilities which are located on one tract or contiguous tracts of land and are utilized by one electric consumer shall together constitute one premises . . ."

Because the construction of the shed was not contemplated either at the time Dunaway applied to Marietta for temporary construction service or at the time construction actually began on the project, and because the structures which were planned at that time were located more than 300 feet from Marietta's existing lines, we hold that the Commission was correct in concluding that Georgia Power had the

exclusive right under the Act to extend and furnish permanent service to the premises. This conclusion is demanded by the unambiguous language of § 46-3-8 (f), regardless of whether the shed may properly be considered a "building, structure, or facility for which electricity is being or is to be furnished" within the meaning of § 46-3-3 (6). Consequently, it is unnecessary for us to address the correctness of the Commission's additional conclusion that because the shed was designed and constructed solely to justify the extension of electric service to the office and warehouse complex, it never did constitute part of the "premises" within the meaning of that subsection.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 20, 1985.

*W. R. Robertson III*, for appellant.

*Robert P. Williams II, Jeffrey R. Nickerson, Arthur H. Domby, Deppish Kirkland III, Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, Michael S. Bradley, Staff Assistant Attorney General*, for appellees.