72022. HARDISON v. BOOKER.
(347 SE2d 681)

BENHAM, Judge.

On July 21, 1984, Booker was personally served with official notice that the Department of Public Safety had declared him an habitual violator and that his license and privilege to operate a motor vehicle in Georgia was revoked for a five-year period. In a departmental hearing on October 31, 1984, appellee was denied reinstatement of his driver's license. He then appealed the department's adverse decision to the Superior Court of Fulton County, which reversed the depart-

ment's decision and ordered appellee's driver's license returned to him. This court granted the application for discretionary review filed by appellant, the Commissioner of the Department of Public Safety.

1. The trial court found the notice of revocation to be materially defective in that it did not contain any information about the revoked licensee's right to request a departmental hearing and his subsequent appellate rights. This oversight was rendered harmless when appellee was granted an out-of-time hearing on October 31, 1984, and pursued his appellate rights by bringing the adverse department decision to the superior court.

2. The trial court also found error in the fact that the police officer who delivered the notice of revocation "had not been impliedly or expressly authorized by the Commissioner of the Department of Public Safety to act as an agent for service as required by law." The trial court's holding is apparently based on the language of OCGA § 9-11-4 (c), which requires service of process to be served by a sheriff, a marshal, or either's deputy, or "any citizen of the United States specially appointed by the court for that purpose." However, notice of habitual violator status and concomitant license revocation is not service of civil process as described in OCGA § 9-11-4, and the restrictions appurtenant thereto are not applicable. See *Hill v. State*, 162 Ga. App. 637 (1) (292 SE2d 512) (1982). Under OCGA § 40-5-58 (b), a driver is to be informed of his status as an habitual violator by certified mail or by personal service, which was accomplished in the case at bar when the police officer delivered the notice to appellee.

3. The trial court next concluded appellee had been denied due process and equal protection in the departmental hearing because "the hearing officer had no authority or discretion in reinstating an habitual violator." "[T]he Georgia scheme of administrative appeal and de novo review in the superior court meets the due process hearing requirements of the state and federal constitutions." *Hardison v. Shepard*, 246 Ga. 196 (2) (269 SE2d 458) (1980). "Insofar as his claim sounds in equal protection, we do not find any violation. All habitual violators are treated equally and the statutes so providing are not arbitrary, unreasonable or without rational basis. [Cit.]" *Cox v. State*, 241 Ga. 154, 155 (fn. 1) (244 SE2d 1) (1978).

4. Finally, the trial court concluded that appellee was illegally and wrongfully declared an habitual violator because the statutory basis for the department's declaration, OCGA § 40-5-63 (a) (3), was not listed in OCGA § 40-5-58 as one of the grounds for which an individual is declared an habitual violator.

Appellant declared appellee an habitual violator pursuant to the provisions of OCGA § 40-5-63 (a) (3), as it existed in 1984. That statute provided that "any person who . . . has such points assessed against him as to require the suspension of his license pursuant to

Code Section 40-5-57 shall . . . have his license suspended as follows: . . . (3) For a third assessment of requisite points . . . within five years, such person shall be considered an habitual violator, and his license shall be revoked as provided for in paragraph (1) of subsection (a) of Code Section 40-5-62." The record contains evidence that appellee's license was suspended in July 1979, August 1982, and July 1984 due to the assessment of the requisite points under OCGA § 40-5-57.

Under OCGA § 40-5-62 (a) (1), referred to in OCGA § 40-5-63 (a) (3), a person whose driver's license has been revoked is not eligible to apply for a new license until "[f]ive years from the date on which the revoked license was surrendered to and received by the department pursuant to a person's having been declared an habitual violator under Code Section 40-5-58." OCGA § 40-5-58 deals with the determination of habitual violator status and defines, for purposes of § 40-5-58, the term "habitual violator" as one who has been convicted of particular driving offenses three or more times or who has been convicted of at least fifteen moving violations. In the trial court, appellee maintained that the failure to specify point assessments in § 40-5-58 as a means by which one becomes an habitual violator vitiated the department's ruling that appellee was an habitual violator and entitled him to reinstatement of his driver's license. The trial court agreed with appellee; we do not.

We must first examine the statutory scheme of license suspension and revocation as a whole. The Department of Public Safety is statutorily authorized to suspend or revoke a driver's license without a preliminary hearing because "[t]he State of Georgia considers dangerous, negligent, and incompetent drivers to be a direct and immediate threat to the welfare and safety of the general public, and it is in the best interests of the citizens of Georgia immediately to remove such drivers from the highways of this state." OCGA § 40-5-57 (a). To identify habitual traffic law violators, a system of point assessment was established. OCGA § 40-5-57 (b) and (c). And habitual violator was statutorily defined as one who had been convicted of at least three more serious traffic-related offenses or at least fifteen moving violations. OCGA § 40-5-58 (a) (1) and (a) (2). As soon as departmental records reflect a person's habitual violator status, he is notified of his status and his license is revoked. OCGA § 40-5-58 (b). Under OCGA § 40-5-54, a license is automatically suspended upon conviction of one of a number of listed offenses, and the third such conviction in five years results in a mandatory revocation of the license. OCGA § 40-5-63 (a) (3). Similarly, three assessments within five years of points sufficient to suspend a license under § 40-5-57 result in the automatic revocation of the driver's license. OCGA § 40-5-63 (a) (3). However, while § 40-5-63 (a) (3) mandates license revocation for these

repeated offenses, it does not detail the period of revocation. Instead, it refers to OCGA § 40-5-62 (a) (1), which assesses a five-year period of revocation. While, as appellee and the trial court noted, § 40-5-62 (a) (1) references only one statutorily prescribed method of revocation (OCGA § 40-5-58), we do not believe the legislature intended those who have had their licenses revoked under § 40-5-63 (a) (3) to lose their licenses for an indefinite period of time, which is the result reached if the statutory interpretation excludes the reference to § 40-5-62 (a) (1). However, the legislative reference in § 40-5-63 (a) (3) to § 40-5-62 (a) (1) is evidence of an intent to revoke the licenses of § 40-5-63 (a) (3) violators for a definite term, five years. Reading the statutory scheme as a whole, we are of the opinion that the period of revocation of a driver's license revoked due to the commission of illegal driving acts is governed by § 40-5-62.

The statutory interpretation urged by appellee and adopted by the trial court reduces OCGA § 40-5-63 (a) (3) to a nullity, for if OCGA § 40-5-58 is the sole source of habitual violator status, § 40-5-63 (a) (3), labeling as an habitual violator one who is convicted of three offenses listed in OCGA § 40-5-54 within five years or one who accumulates three point assessments authorizing suspension within five years, is without force solely because it is not contained in § 40-5-58. To interpret the statute as the trial court did causes quite an anomalous result: upon the accumulation of one or two convictions or assessments of the requisite points within the appropriate time, a driver's license is suspended. However, continued bad driving and the accumulation of a third set of requisite points or a third conviction is not actionable. "A legislative body should always be presumed to mean something by the passage of an Act and an Act should not be so construed as to render it absolutely meaningless. [Cits.]" *Buice v. Dixon,* 223 Ga. 645, 646 (157 SE2d 481) (1967). The legislature expressly recognized the danger bad drivers pose to the general public and authorized the suspension and revocation of the drivers' licenses of drivers who are habitually dangerous or negligent or incompetent. OCGA § 40-5-57; *Cofer v. Gurley,* 146 Ga. App. 420 (246 SE2d 436) (1978), overruled on other grounds, *Williams v. Cofer,* 246 Ga. 344 (3) (271 SE2d 486) (1980). The statutes must not be interpreted to thwart the avowed purpose of the legislature.

For the foregoing reasons, the trial court erred when it reversed the decision of the Department of Public Safety and ordered reinstatement of appellee's driver's license.

*Judgment reversed. Deen P. J., and Beasley, J., concur.*

DECIDED JULY 8, 1986.

*Michael J. Bowers, Attorney General, Marion O. Gordon, First*

*Assistant Attorney General, Daryl A. Robinson, Senior Assistant Attorney General, Neal B. Childers, Staff Assistant Attorney General, for appellant.*
*J. Ralph McClelland III, for appellee.*