## 44276. BOOKER v. THE STATE.
### (354 SE2d 425)

GREGORY, Justice.

In a bifurcated proceeding the appellant, Terry Lee Booker, was convicted of the malice murder of Richard Hamby,[1] and possession of a firearm by a convicted felon. He was sentenced to life imprisonment for the murder to be followed by four years imprisonment for the possession conviction.

On the evening of April 1, 1986, James Peacock gave the victim $1200 to purchase marijuana from the appellant. At trial the appellant testified he had sold drugs to the victim on numerous occasions. The victim was seen that evening between 8:30 and 9:30 p.m. by several witnesses at the boarding house where the appellant resided. Sometime after 9:30 p.m. the appellant was observed walking away from the direction of the shopping center where the victim's aban-

---

[1] The crime occurred on April 1, 1986. The appellant was arrested on April 9, 1986. His trial commenced on December 1, 1986. The verdicts were returned on December 4, 1986, and sentences entered December 18, 1986. No motion for new trial was filed. The transcript was certified on January 8, 1987, and the case docketed in this court on January 9, 1987. The case was submitted to us on briefs on February 20, 1987.

doned car was discovered later that night. The victim's body was found on April 3. He had been shot once in the base of the neck with a .22 caliber bullet.

Mark Spillane testified that four or five days before the murder he had traded a .22 caliber Colt pistol to the appellant for a specified quantity of marijuana. Spillane testified that following the discovery of the victim's body, but prior to the appellant's arrest, the appellant told Spillane that he "might be involved in a murder case and the gun might be involved."

The evidence showed that the appellant and David Widgeon, who lived in the boarding house with appellant, stored a number of guns, including the .22 caliber Colt, and a .22 revolver Derringer owned by Widgeon, in the appellant's room. The appellant testified that on April 2 he and Widgeon moved all of the guns to the trunk of Widgeon's car. Widgeon then parked the car at his grandmother's house. An expert from the State Crime Lab testified that in his opinion the bullet which killed the victim had been fired from the appellant's .22 caliber Colt.

David Widgeon testified at trial that in the early morning hours of April 2 the appellant confessed to Widgeon that he had killed the victim.

The appellant took the stand in his own behalf and testified that the victim approached him on the night of April 1 about purchasing a quantity of marijuana, but left when the appellant informed him he had nothing to sell. The appellant stated he then went for a walk "to sober up." The appellant denied both murdering the victim and telling Widgeon that he had committed the crime.

1. The appellant argues that the evidence is not sufficient to support the verdict, and that the more credible conclusion to be drawn from the evidence is that David Widgeon committed the murder. This court does not weigh the evidence on appeal or resolve conflicts in trial testimony. Rather it is the function of this court to examine the evidence in the light most favorable to the verdict and to determine whether any rational trier of fact could have found the appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). Doing so, we find the standard of *Jackson v. Virginia* has been met in this case.

2. During the trial of the murder charge the State was permitted to introduce evidence of the appellant's 1978 conviction in North Carolina for common-law robbery[2] after the appellant placed his character in evidence. The evidence introduced by the State showed that

---

[2] Under North Carolina law "[c]ommon law robbery" is defined as "the felonious, nonconsensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691 (292 SE2d 264, 270) (1982).

the appellant had been indicted in North Carolina for armed robbery, but had entered a guilty plea to felonious common-law robbery.

The indictment in this case, charging the appellant with the offense of possession of a firearm by a convicted felon, OCGA § 16-11-131, alleged that the underlying felony was a North Carolina conviction of "Robbery with a Dangerous Weapon." The appellant argues that he was prejudiced by this language because there was no evidence to show that a "dangerous weapon" had been involved in the offense for which he was convicted in North Carolina.

We note that the appellant is not making a due process argument that he had no notice of the charge he was required to defend against, nor is his argument that the variance between the indictment and evidence offered at trial is of itself fatal. Rather his argument focuses on the alleged unfairness arising from giving the jury "false information as to the nature of the prior felony."

The trial court properly instructed the jury that the indictment was not evidence in the case. Evidence clarifying the nature of the North Carolina indictment and conviction was admitted for the jury's consideration. We hold that any prejudice arising from the difference in the language used in the North Carolina conviction and in the indictment in this case was not so great as to render the appellant's trial unfair.

3. The appellant argues the trial court erred in not administering the oath prescribed in OCGA § 15-12-139[3] to the jury prior to the trial of the possession charge. It is undisputed that the trial court administered this oath to the jury prior to trial of the murder charge, instructing them that the purpose of the oath was "to try the issues of this case." It is also undisputed that the possession charge was tried immediately following the return of the guilty verdict on the murder charge. The trial court did not discharge the jury at any time during the proceedings. Under these circumstances we find no error. *Colbert v. State*, 178 Ga. App. 657 (1) (344 SE2d 479) (1986).

4. The appellant maintains the manner in which he was tried for the offense of possession of a firearm by a convicted felon was neither fair nor impartial. We do not agree. It is clear the trial court followed the bifurcated procedure approved by this court in *Head v. State*, 253 Ga. 429 (3) (322 SE2d 228) (1984). Following the appellant's conviction of the murder charge, the trial court informed the jury of the possession charge, and instructed them accordingly.[4] We find no er-

---

[3] OCGA § 15-12-139 provides,

"In all criminal cases, the following oath shall be administered to the jury:

'You shall well and truly try the issue formed upon this bill of indictment (or accusation) between the State of Georgia and (name of accused), who is charged with (here state the crime or offense), and a true verdict give according to the evidence. So help you God.'

The judge or clerk of the court shall administer the oath to the jurors."

[4] Neither party offered any additional evidence with regard to this offense.

ror.

5. The appellant argues the trial court erred in charging the law of flight. The victim's body was discovered on April 3, 1986. The appellant consented to be interviewed by police later that day but was not placed under arrest at this time. On April 4 the appellant moved out of his residence into a Muscogee County motel where he remained for three days. On April 7 he hitchhiked to Albany and was arrested there on April 9. At trial the appellant testified he went to Albany to sell drugs.

Based on this evidence we hold that a charge on flight was warranted. See *Cameron v. State*, 256 Ga. 218 (345 SE2d 829) (1986).

6. We have examined the remaining issues raised by appellant and find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 15, 1987.

*Frank K. Martin, H. Haywood Turner III*, for appellant.
*William J. Smith, District Attorney, J. Gray Conger, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General*, for appellee.