74861. CITY OF LaGRANGE v. GEORGIA POWER COMPANY.
(363 SE2d 286)

SOGNIER, Judge.

The City of LaGrange and Georgia Power Company filed a joint petition for a declaratory order with the Georgia Public Service Commission (PSC), to determine which had the right under the Georgia Territorial Electric Service Act, OCGA § 46-3-1 et seq., to provide electric service to a new industrial customer. Upon stipulated facts, the PSC determined that the City did not have the exclusive right to provide such service, but that the customer should have the right to

choose from among the authorized suppliers. The superior court affirmed the PSC's order, and the City appeals.

The record reveals that in an effort to attract new industry to the City, the Development Authority of LaGrange constructed a building in an industrial park on speculation. Temporary electric service to the site during construction was provided by the City on application of the contractor, and service was transferred to the Authority after completion of the shell. The building was purchased by a manufacturer of plastic bags, and electric service was again transferred, this time to the contractor hired by the purchaser to complete construction of the facility. When operational, the premises, located within an area annexed to the City after March 29, 1973, will have single-metered service and a connected load in excess of 900 kilowatts. Both appellant and appellee own lines and are authorized to provide service to the location.

The Georgia Territorial Electric Service Act generally provides for assignment of electric suppliers by geographical location. However, OCGA § 46-3-8 (a) (4) provides in pertinent part that "[n]otwithstanding any other provision of this part, but subject to subsections (b) and (c) of this Code section, . . . service to one or more new premises . . . , if utilized by one consumer and having single-metered service and a connected load which, at the time of initial full operation of the premises, is 900 kilowatts or greater . . . , may be extended and furnished, if chosen by the consumer . . . [b]y any electric supplier owning lines in a municipality if the premises are located in a geographic area annexed in any manner to such municipality after March 29, 1973." Thus, subsection (a) of the statute gives "large load" consumers (such as the one in this case) the right to choose among the authorized suppliers of electric service. Subsection (b) of the statute, the "grandfather clause," provides, however, that, notwithstanding the customer choice provision, "every electric supplier shall have the exclusive right to continue serving any premises lawfully served by it on March 29, 1973, or thereafter lawfully served by it pursuant to this part . . . ," thereby providing for an exception to the customer-choice provision when the customer's premises has been lawfully served previously by a provider pursuant to the Act.

The City contends the trial court erred by affirming the PSC's order because, having lawfully provided service to the premises during construction, OCGA § 46-3-8 (b) granted to it the exclusive right to continue serving the premises. We do not agree. The City provided electric service to the temporary construction site in question here, a construction site which at that time did not qualify as a large load consumer; thus, no choice was involved in the selection of the provider of electric service to that site. The City now seeks to extend that temporary provision of electric service to the permanent prem-

ises on the basis that it has been "grandfathered" into the exclusive right to provide such service by subsection (b). We are not persuaded by the City's interpretation of the statute, which would deprive certain large load consumers in situations such as the one here of their statutory right to choose a provider of electric service under subsection (a), thus eviscerating that entire subsection and the intention of the legislature in enacting it. Under the City's interpretation, customer choice would be eliminated whenever temporary service is provided to construction sites under other parts of the Act. The new large load customer here would be "locked in" to the choice made by the City — a party not totally without self-interest in that it is also the beneficiary of this choice, since it is the supplier chosen. Thus, the evident purpose, and indeed the plain words of subsection (a) of OCGA § 46-3-8, would be rendered meaningless: there would be no customer choice.

Our rejection of the City's interpretation of subsection (b) is further supported by an examination of subsection (f) of the statute, which, while not addressing itself at all to large load consumers, specifically provides that a supplier may furnish *temporary* or *construction* service to premises in some instances and yet not acquire the exclusive right to provide *permanent* service to the premises. Since subsection (f) is nowhere qualified as an exception to subsection (b), the interpretation urged by the City places the plain language of subsection (f) in conflict with subsection (b).

Such a result is not only anomalous, it is unnecessary. The PSC interpreted subsection (b) so as to harmonize all three subsections of the statute to provide a reasonable and sensible construction. Under the PSC's interpretation, the providing of temporary service to a *construction* site by one supplier of electric service does not foreclose the large load consumer from choosing another authorized supplier for the *permanent* service to the *completed* site. In this manner subsection (a) is given its plain and unambiguous meaning that large load customers may choose among the authorized electric suppliers; subsection (b) continues to authorize every supplier who once furnishes *permanent* service to premises in accordance with the Act to have, notwithstanding any other provision, the exclusive right to continue serving those premises; and subsection (f), which simply has no bearing on this issue, remains viable according to its plain language in the situations in which it was intended to apply without any conflict with subsection (b).

In interpreting OCGA § 46-3-8, it is our duty to consider the subsections in pari materia, and to reconcile them, if possible, so that they may be read as consistent and harmonious with one another. *Board of Trustees v. Christy*, 246 Ga. 553 (272 SE2d 288) (1980). The construction given the statute by the PSC is consistent with these

established principles of statutory construction. Moreover, the PSC, as the agency charged with oversight and supervision of electric power companies in this State, OCGA § 46-2-20 (a), including the enforcement and administration of the Georgia Territorial Electric Service Act, is entitled to great deference in its interpretation of the Act. "The administrative interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight. [Cits.]" *Mason v. Svc. Loan &c. Co.*, 128 Ga. App. 828, 831 (198 SE2d 391) (1973).

We find no merit in any argument that the Supreme Court's holding in *City of Calhoun v. North Ga. Elec. &c. Corp.*, 233 Ga. 759 (213 SE2d 596) (1975) requires a different result. Although both *City of Calhoun* and the case sub judice involve the Georgia Territorial Electric Service Act, that is the only point of reference these cases have in common since *City of Calhoun* was concerned solely with a constitutional challenge to the Act, and does not suggest or intimate the validity of a different interpretation.

Since we find that the PSC correctly interpreted the statute, the superior court did not err by affirming the PSC's order.

*Judgment affirmed. Birdsong, C. J., Deen, P. J., Carley, Pope and Benham, JJ., concur. McMurray, P. J., Banke, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

The PSC ruled that the city lawfully provided service initially to the site of the manufacturing plant under construction pursuant to the Act because at the time service was provided to the construction site the connected load was less than 900 kilowatts, "and thus service was provided by the assigned provider, the city. Thus, the question presented is whether an electric supplier who lawfully extends and furnishes electric service to a construction site at which a premises is to be constructed which, at the time of initial full operation, will require 900 kilowatts or greater, may preclude the operation of the 'customer choice' provisions of [OCGA § 46-3-8 (a)] by the customer."

The city contended that its initial providing of electric service to the construction site of the premises constituted service as contemplated by OCGA § 46-3-8 (b) and (f) so as to grant it the exclusive right to continue thereafter to serve the premises. Subsection (b) is the "grandfather" clause. Subsection (f) establishes that "[t]he time at which an electric supplier . . . shall be considered as having the right to extend and furnish . . . service to new premises shall be the time at which written application for temporary construction or permanent service is made to any electric supplier by the consumer utilizing such premises or the time at which construction of such premises is commenced, whichever first occurs. The location of a

premises for temporary construction service shall be deemed to be the same as the location of the premises which shall require permanent service after construction. . . ."

After noting that the Act empowered it to arbitrate disputes and, where there was no clear cut resolution, to resort to statutory construction and common sense application of the Act, the PSC concluded that "to allow the city's contention to prevail would emasculate the provisions of subsection (a)," and thus "a distinction should be drawn between temporary construction service and permanent service, for purposes of subsection (a) 'customer choice' provisions . . . By encouraging healthy competition between electric suppliers for large load customers, electric suppliers will strive to provide reliable electric service at the least cost to the consumer . . . Therefore, in instances where a premises under construction takes temporary or construction service from an electric supplier lawfully authorized to provide that electric service and the premises, at initial full operations, will be utilized by one consumer and have single-metered service of 900 kilowatts or greater, the customer shall be entitled to select an electric supplier for permanent service pursuant to OCGA § 46-3-8 (a), notwithstanding the previous provision of temporary construction service by an electric supplier." (Indention omitted.)

The city's argument is that the plain and unambiguous language of the Territorial Electric Service Act, specifically the "grandfather" provision of OCGA § 46-3-8 (b), compels the finding that it had the exclusive right to serve the consumer utilizing the premises from the time the city provided temporary construction service to the site.

While the aims expressed by the PSC in its interpretation of the purposes of the Act may be desirable public policy, they are not in accord with the construction previously endorsed by our Supreme Court and stated in *City of Calhoun v. North Ga. Elec. &c. Corp.*, 233 Ga. 759, 767-68 (5) (a) (213 SE2d 596) (1975), where the Act was unsuccessfully attacked as an unconstitutional restraint of trade. The Court recognized that "under the standards set forth in the Act, even though a particular area may be assigned to an electric supplier, other electric suppliers already serving customers in that area may continue to serve those customers as well as new customers located near their lines." It explained that the restriction on competition was valid because "unrestricted competition between electric suppliers could injure existing public service and otherwise adversely affect the public interest . . . [t]o the extent the assignment of service areas under the Act restrains competition, the restraint is for the benefit of the public in minimization of duplication of facilities and prevention of other adverse economic and environmental effects." (Indention omitted.)

Not only was the statutory interpretation reached by the PSC and affirmed by the superior court here inconsistent with the con-

struction of the Act delineated in *City of Calhoun*, supra, it was inappropriate. " '[W]here the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden' [cit.], the only exception being the case where an unequivocal meaning ascribes to the legislature an unreasonable or senseless intent." *Taco Mac v. Atlanta Bd. of Zoning Adjustment*, 255 Ga. 538, 539 (340 SE2d 922) (1986).

Moreover, "statutes must not be interpreted to thwart the avowed purpose of the legislature." *Hardison v. Booker*, 179 Ga. App. 693, 696 (4) (347 SE2d 681) (1986). The legislative intent and policy is specifically declared within Section 2 (OCGA § 46-3-2) of the Territorial Electric Service Act, as the Supreme Court pointed out in *City of Calhoun*, supra at 761 (1). Its purposes include "the orderly furnishing of electric service and minimizing interference." *City of Calhoun*, supra at 765. "[The Act's stated] purposes are put into effect completely and thoroughly by other provisions. The Public Service Commission is delegated the authority only to apply the standards set forth in the Act, to make rules and regulations according to such standards and to administer them." *City of Calhoun*, supra at 769.

Bearing in mind the goals of the Act, I conclude that the right of an over-900 kilowatt customer to choose its supplier is made subordinate to the right of an assigned electric service supplier to continue service once it has been lawfully extended and furnished under OCGA § 46-3-8 (f). While this may preclude some 900-plus kilowatt customers from choosing their suppliers, it results from following the Act's avowed purposes. Thus the strained distinction reached by the PSC between temporary and permanent service in attempting to nullify the specific exception to the "grandfather" provision of OCGA § 46-3-8 (b) exempted by subsection (f) is both unwarranted and unneeded.

" 'Service' means retail electric service and includes temporary or construction service as well as permanent service. . . ." OCGA § 46-3-3 (9). It is undisputed that the city lawfully extended retail electric service to the premises in 1984 and has continuously provided service at all times relevant since then. " 'Premises' means the building, structure or facility to which electricity is being or is to be furnished. . . ." OCGA § 46-3-3 (6). In this case the premises is the building that was being constructed while electrical service was being furnished by the city. *City of Marietta Bd. of Lights &c. v. Ga. Power Co.*, 176 Ga. App. 123 (335 SE2d 467) (1985).

The 900-kilowatt "customer choice" exception of OCGA § 46-3-8 (a) is thus made specifically subject to the rights of the electric supplier first providing service to continue to serve the premises. The unavoidable effect of the Act is that customer choice is foreclosed once lawful service, including temporary construction service, has been

provided to the premises.

I am authorized to state that Presiding Judge McMurray and Presiding Judge Banke join in this dissent.

DECIDED NOVEMBER 5, 1987 —
REHEARING DENIED NOVEMBER 24, 1987 —

*James R. Lewis, L. Clifford Adams, Jr.*, for appellant.
*Robert P. Edwards, Jr., Charles F. Palmer*, for appellee.