S99A0642. BARELA v. THE STATE.
(517 SE2d 321)

SEARS, Justice.

Appellant Gregory Barela appeals his felony murder conviction,[1] claiming that the evidence introduced against him was insufficient. Having reviewed the facts introduced in support of the State's prosecution in a light most favorable to the jury's verdict, as we are required to do, we find ample support for appellant's conviction, and we affirm.

---

[4] See OCGA § 48-2-60 (b).

[1] The murder was committed sometime between April 7 and 9, 1996, and appellant was indicted in September 1997 on charges of malice and felony murder, and aggravated assault. At the conclusion of a trial held on March 30-April 3, 1998, appellant was convicted of felony murder and aggravated assault. The latter conviction was merged by operation of law, and appellant was sentenced to life imprisonment on the murder conviction. Appellant's new trial motion was filed on April 5, 1998, and denied on December 4, 1998. The notice of appeal was filed on December 29, 1998, the appeal was docketed in this Court on February 1, 1999, and submitted for decision without oral argument on March 29, 1999.

The evidence of record, viewed most favorably to the jury's verdict,[2] enabled any rational trier of fact to conclude that appellant lived with his girlfriend in the basement efficiency apartment of a duplex residence owned by appellant's stepbrother. Appellant was a frequent user of crack cocaine, and had previously purchased crack from the victim, 14-year-old Jeremy Hullem. On the afternoon of April 7, 1996, appellant asked two witnesses if they had seen Hullem, and stated that if he found Hullem, he would kill him due to a bad drug deal. Later that day, appellant encountered Hullem walking with his brothers, and asked Hullem to sell him some crack. Hullem agreed to wait near appellant's apartment for appellant to return so that the drug sale could be consummated. When Hullem did not return home that evening, one of his brothers went to appellant's apartment looking for him. Appellant told the brother that Hullem had left his apartment, and that he had seen Hullem talking to someone in a truck. When Hullem had not returned home by the following day, two of his brothers went to appellant's apartment, and appellant stated that he had last seen Hullem speaking to a white man.

The following day, Hullem's body was found off a wooded trail that ran directly behind appellant's apartment. He had been strangled, and his body was found lying on a white shower curtain, with a plastic grocery bag tied over his head. Dark head hairs embedded in the dried blood and mucus found on Hullem's face were later determined to be consistent with appellant's head hairs. Another hair found on the sheet laying under Hullem's body was later determined to be consistent with appellant's stepbrother's hair. Hullem's shoe was found laying between appellant's apartment and where the body was found. No blood was discovered around the body, and police quickly concluded that in all likelihood, the murder had occurred elsewhere and the body had been dumped off the wooded trail.

Police investigating the body observed appellant watching them intently from his nearby apartment. When police questioned appellant, he was extremely nervous and agitated. Appellant first denied knowing Hullem, and then told police that he had bought crack two days earlier from a young man he knew as "Little Man," which was Hullem's nickname. Appellant assured police that Little Man had never been in his apartment. A plastic grocery bag with lettering on it, consistent with the bag found over Hullem's head, was taken from appellant's apartment. It later was determined that the bag was consistent with the type of bags used at the grocery store where appellant's girlfriend was employed.

A warrant was obtained, and appellant's apartment building was

---

[2] See *Booker v. State*, 257 Ga. 37, 38 (354 SE2d 425) (1987).

searched. Blood taken from a fresh stain in the carpeting of appellant's apartment was subsequently determined to be consistent with Hullem's blood. Carpet fibers found on Hullem's body were consistent with carpeting samples taken from appellant's apartment building. The shower curtain on which Hullem's body was found was almost identical to curtains discovered in the apartment located upstairs from appellant's basement efficiency. The tenant renting the upstairs apartment, Downs, who was not residing in his apartment at the time of the murder, testified that he obtained the shower curtains from his family's linen supply company, and used them as furniture dust covers and window curtains. Downs also testified that he thought that a shower curtain that he was using as a dust cover on a sofa had disappeared around the time of the murder. A common door provided access between Down's upper apartment and appellant's basement efficiency, although Downs testified that he usually kept the door locked.

Two witnesses testified that shortly after the murder, appellant's girlfriend was very upset and told them that appellant had done something wrong, and she was fearful of his imminent arrest. Immediately after the body was discovered, appellant's girlfriend borrowed a neighbor's vacuum cleaner and uncharacteristically cleaned the area behind the couple's residence of all trash and debris.

Appellant urges that the jury's guilty verdict was contrary to and strongly against both the weight of the evidence and principles of law. We disagree. In support of his arguments, appellant makes much of the fact that the shower curtain upon which the victim's body was discovered came not from his apartment, but rather from the adjacent apartment. He also claims that nothing found at the crime scene or in the autopsy of the victim absolutely identified him as the murderer.

When assessing the sufficiency of evidence to support a criminal conviction, this Court does not weigh or evaluate the evidence for itself, nor does it resolve conflicts concerning the evidence. Rather, it examines the evidence in its entirety in a light most favorable to the verdict to determine whether any rational trier of fact could have found the accused guilty beyond a reasonable doubt.[3] When the evidence is entirely circumstantial, as it was in the State's case against appellant, a conviction will be sustained only if the proven facts are both consistent with the hypothesis of guilt, and also exclude every other reasonable hypothesis except the guilt of the accused.[4]

However, it is not necessary for circumstantial evidence to

---

[3] *Booker*, 257 Ga. at 38.
[4] OCGA § 24-4-6.

exclude every *conceivable* hypothesis of a defendant's innocence in order to authorize a conviction; only *reasonable* hypotheses must be excluded. In cases based upon circumstantial evidence, questions concerning the exclusion of all reasonable hypotheses other than guilt are generally left to the jury, and when the evidence is sufficient to have enabled reasonable jurors to exclude all reasonable hypotheses except an accused's guilt, that conclusion will not be disturbed on appeal unless it is unsupportable as a matter of law.[5]

In his arguments on appeal, appellant asks us to view the evidence of record in a light that is most favorable to him, rather than in a light most favorable to the jury's verdict, contrary to the precedent discussed above. Appellant also asks this Court to evaluate and weigh the evidence in the same manner as a jury, which we will not do. As explained, there was evidence showing that the victim's blood was found in the carpeting of appellant's apartment, despite appellant's assertion that the victim had never been in his home. Appellant threatened to kill the victim immediately before the murder occurred. Immediately after the murder, appellant's girlfriend was visibly shaken and told others that appellant had done something horrible and she expected him to be arrested. We also note that the jury in this case viewed the crime scene and therefore could evaluate the logistics associated with both the State's and the appellant's evidence. Having reviewed the totality of the evidence, we are satisfied that it was sufficient to exclude all reasonable hypotheses other than appellant's guilt, and to enable reasonable triers of fact to conclude beyond a reasonable doubt that appellant was guilty of the crimes for which he was convicted and sentenced.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 1999.

*James S. Purvis,* for appellant.

*Richard R. Read, District Attorney, Dabney Y. Kentner, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jeanne K. Strickland, Assistant Attorney General,* for appellee.

---

[5] *Roper v. State,* 263 Ga. 201 (429 SE2d 668) (1993).