## A01A1362. FREI v. THE STATE.
### (557 SE2d 49)

BLACKBURN, Chief Judge.

Following a jury trial, James Alexander Frei appeals his conviction for aggravated child molestation, statutory rape, incest, sodomy, and child molestation, contending that the trial court erred by: (1) intimidating witnesses and bullying defense counsel; (2) admitting Frei's confession into evidence; (3) failing to grant a new trial because the State did not disclose information that the victim made a prior accusation of molestation against her uncle; (4) improperly restricted elicitation of good character evidence from his wife; and (5) improperly commenting on the evidence. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the record shows that Frei engaged in sexual intercourse with his minor stepdaughter approximately 50 times. Distraught and feeling guilty, Frei admitted the crime to police in both written and oral statements. At trial, the victim described these acts of sexual intercourse to the jury, and Frei's wife, Corrie, testified both that Frei admitted the crime to her and that she had seen a videotape in which Frei had touched her daughter inappropriately. In summary, the victim described the crimes, Frei admitted to the crimes, and witnesses corroborated the crimes. Certainly, this evidence was more than sufficient to support the conviction. See *Jackson v. Virginia.*[1]

1. Frei contends that the trial court inappropriately intimidated witnesses and bullied his defense counsel, resulting in an unfair trial. The record, however, fails to support this broad enumeration.

The transcript shows that, on the day of Frei's trial, the victim, Frei's stepdaughter, did not come to court as planned although she had previously stated that she wished to testify. Looking into the matter, the trial court learned that Frei's defense counsel and his wife met with the victim the day before trial, encouraged her to engage separate counsel, and told her that she did not have to attend the trial if she did not want to do so. Later, when the victim was on her way to meet with the prosecutor, her mother, who was openly sympathetic to Frei, stopped the victim, asked her to get into her car, drove her to a friend's house, and left her there without transportation.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

On the day of trial, deputies picked the victim up after she had been located and brought her to the courtroom. At that time, the trial court conducted a hearing to determine whether the victim's mother and defense counsel had inappropriately tampered with the witness, attempting to sway her decision to testify against her stepfather. During this hearing, the trial court admonished all parties involved that it would not tolerate such behavior and that it would be displeased if the evidence showed that tampering had occurred. Ultimately, the hearing showed that, although her mother did not want her to testify and defense counsel insisted that the victim wanted to abstain from taking the stand, the victim clearly wanted to do so if necessary.

Accordingly, despite Frei's complaints that the trial court's actions were designed to intimidate Corrie Frei and bully his defense counsel, the record provides a solid foundation for the trial court's concern over witness tampering, and it did not err in conducting a hearing to determine the circumstances surrounding the victim's failure to show up in the courtroom as planned. This, in turn, undermines Frei's complaints that the trial court's suspicion of tampering pervaded the rest of the trial, frightening witnesses and hampering defense counsel.

Frei received a fair trial. This enumeration lacks merit.

2. Frei contends that the trial court erred by admitting his confession into evidence, arguing that the statement was taken in violation of his *Miranda* rights. Specifically, Frei argues that (a) he was not informed of his *Miranda* rights prior to the time that the statement was given and (b) that the investigating officer improperly gave him a hope of benefit. Again, the record fails to support this contention.

(a) Frei contends that the evidence failed to show that he was properly informed of his *Miranda* rights prior to his confession.

"It is the prosecution's burden to show the voluntariness of a custodial statement by a preponderance of the evidence. And factual and credibility determinations made by a trial judge after a voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous." *Jenkins v. State*.[2]

Pretermitting the question of whether Frei was in custody at the time that he confessed to the crimes, the record shows that the investigating officer testified that, prior to questioning Frei, he informed him of his *Miranda* rights. Although the officer testified that he could not specifically remember the day in question, which occurred years ago, he stated that he always read *Miranda* rights prior to question-

---

[2] *Jenkins v. State*, 251 Ga. App. 76, 77 (553 SE2d 378) (2001).

ing a suspect and that he believed that he had done so in this case. Frei's signed statement, which reiterated his rights and indicated that the investigating officer had sufficiently apprised him of *Miranda*, corroborates the officer's testimony. And, although, Frei disputes the officer's versions of events, the trial court was the appropriate arbiter of credibility in this matter. *Jenkins*, supra.

The trial court's determination that the confession was admissible is supported by the evidence, is not clearly erroneous, and is affirmed.

(b) Frei contends that his confession must be treated as involuntary because the investigating officer told him that he would let the district attorney know that he had cooperated and would do whatever he could to help Frei. This enumeration is patently erroneous.

> For a confession to be admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or the most remote fear of injury. The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect. *Sparks v. State.*[3] The phrase "hope of benefit" generally means the reward of a lighter sentence. *Cooper v. State.*[4] Georgia's appellate courts have held that an officer is not offering a suspect a hope of benefit by telling him that his cooperation will be made known to others, e.g., the trial judge. *Gilliam v. State.*[5] And, we have held that a confession is not tainted because a suspect confesses only after the officer tells him, "I want to help you," *Cooper*, supra, or after the officer says that if the suspect cooperates, he will inform the prosecutor and "it might help him." *Lyles v. State.*[6] We have also upheld the admission of a confession where the officers told the suspect that they would tell the prosecutor about his cooperation and that this *might* result in a reduced sentence, but that they were making no promises and had no authority to make any promise of leniency. *Gadson v. State.*[7]

(Footnote omitted.) *Evans v. State.*[8]

Here, the investigating officer told Frei that he would let the dis-

[3] *Sparks v. State*, 232 Ga. App. 179, 184 (4) (501 SE2d 562) (1998).
[4] *Cooper v. State*, 256 Ga. 234, 235 (2) (347 SE2d 553) (1986).
[5] *Gilliam v. State*, 268 Ga. 690, 692 (3) (492 SE2d 185) (1997).
[6] *Lyles v. State*, 221 Ga. App. 560, 561 (1) (472 SE2d 132) (1996).
[7] *Gadson v. State*, 197 Ga. App. 315 (1) (398 SE2d 409) (1990).
[8] *Evans v. State*, 248 Ga. App. 99, 101-102 (2) (545 SE2d 641) (2001).

trict attorney know that he had cooperated and would do what he could to help him. Based on the authority just cited, we find no error.

3. Frei contends that he should be given a new trial because the State failed to disclose that the victim had made prior unrelated allegations of abuse against her uncle, contrary to the rules of *Brady v. Maryland.*[9] This information, however, was not contained in the prosecutor's files, and there is no evidence showing that the prosecutor was otherwise privy to this information.

There is no evidence in the record that the State was aware of the victim's prior allegations. Although the record shows that the victim accused her uncle of molestation[10] and communicated such accusations to her Department of Family & Children Services (DFACS) counselor, a psychiatrist retained by DFACS, and her mother, the State was never informed about this occurrence, and the allegations were never made a part of DFACS' files which would facilitate the State's discovery. As such, the prior accusations of molestation were not discoverable by the State absent some spontaneous statement by one of the parties involved. Furthermore, "*Brady* does not impose an affirmative obligation on the prosecution to seek out information for the defense, even if such information is more accessible to the prosecution than the defense." (Punctuation omitted.) *Ferguson v. State.*[11] And, in this case, the information was at least equally accessible to both the State and the defense; Frei's wife knew of the prior allegations and could have conveyed this information to the defense, which she clearly supported.

Accordingly, this enumeration lacks merit.

4. Frei contends that the trial court inappropriately prevented him from eliciting evidence of his good character from his wife, Corrie Frei. During her testimony, defense counsel asked Corrie whether she would believe her husband if he were to testify under oath. In doing so, defense counsel directly attempted to elicit testimony regarding Frei's credibility. The trial court sustained the State's subsequent objection, finding that issues of credibility are for the jury's determination. This ruling was correct. OCGA § 24-9-80 clearly provides: "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court."

5. Finally, Frei contends that the trial court improperly commented on the testimony of the victim regarding the county in which the crimes committed against her occurred. We disagree.

During the cross-examination of the victim, defense counsel

---

[9] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[10] The victim maintains that these allegations are true, although her uncle denies that he molested the victim.

[11] *Ferguson v. State*, 226 Ga. App. 681, 685 (3) (487 SE2d 467) (1997).

asked the witness numerous times whether her stepfather had molested her in either Madison County or Clarke County. Each time, the victim testified that the acts occurred in Madison County, except for one incident where her stepfather had rubbed her breasts. After defense counsel continued to quiz the victim on the same issue, the trial court interjected that the victim had stated several times that the molestation occurred in Madison County, and the victim agreed. Frei now contends that, by making this statement, the trial court inappropriately commented on the issue of venue.

In this case, the trial court's interjection was merely an attempt to move the trial along in order to get to the truth of the case. As such, the trial court was merely marshaling the trial, not interjecting its opinion. This action, therefore, was within the trial court's discretion. *Eubanks v. State.*[12]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 20, 2001.

*Garland, Samuel & Loeb, Nelson O. Tyrone III*, for appellant.
*Robert W. Lavender, District Attorney, Marsha D. Cole, Assistant District Attorney*, for appellee.

---

[12] *Eubanks v. State*, 240 Ga. 544, 547 (2) (242 SE2d 41) (1978).