A02A0525. THOMPSON v. THE STATE.
(569 SE2d 884)

JOHNSON, Presiding Judge.

Henry Thompson was convicted of driving a motor vehicle after having been declared an habitual violator and having received notice that his driver's license had been revoked. On appeal, he raises nine enumerations of error. None of the enumerations has merit, so we affirm his conviction.

1. Thompson challenges the sufficiency of the evidence to support the conviction. When assessing the sufficiency of evidence to support a criminal conviction, this Court does not weigh or evaluate the evidence for itself, nor does it resolve conflicts concerning the evidence.[1] Rather, it examines the evidence in its entirety in a light most favorable to the verdict to determine whether any rational trier of fact could have found the accused guilty beyond a reasonable doubt.[2]

So viewed, the evidence shows that in November 1999, a police officer with the Glynn County Police Department was traveling in one direction when he passed a pickup truck traveling in the opposite direction. The officer looked at the truck in his rearview mirror and did not see a license plate. Because the truck did not have a license plate "in the proper place," the officer turned his patrol car around and activated the car's blue lights. The truck's driver, Thompson, took a while to stop, but finally did pull over.

The officer got out of his car and walked toward the front of the truck. At "about the same time [the officer] got to the window," he noticed that a license plate was mounted on the truck's rear window, behind Thompson's head. The officer asked Thompson for his driver's license and proof of insurance. Thompson replied that his license had been suspended for nonpayment of child support. The officer then radioed the police department and found that Thompson's license had been revoked because he had been declared an habitual violator.

A police officer with the City of Brunswick Police Department had personally served Thompson with the habitual violator license revocation notice in September 1999. The notice, which contained an acknowledgment of service signed by Thompson, was on a form provided by, returned to, and maintained by the Georgia Department of Public Safety. The evidence was sufficient for a jury to find Thompson guilty beyond a reasonable doubt of driving a motor vehicle after he was declared an habitual violator and after he received notice that his driver's license had been revoked.[3]

2. Thompson complains that the trial court erred in denying his motion for mistrial and in not giving curative instructions when the prosecutor remarked in opening argument that Thompson admitted that his license was suspended for failure to pay child support.

In his opening statement, the prosecutor stated that when the police officer stopped Thompson and asked for his license, Thompson remarked that his license was suspended for nonpayment of child

---

[1] *Barela v. State*, 271 Ga. 169, 171 (517 SE2d 321) (1999).

[2] Id.

[3] See OCGA § 40-5-58 (c) (1); *Sams v. State*, 239 Ga. App. 715, 716 (1) (521 SE2d 848) (1999).

support. Defense counsel objected on the grounds that the child support reference was irrelevant and improperly placed Thompson's character at issue. We disagree.

Evidence which is relevant to an issue in the case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue.[4] The evidence referenced by the prosecutor was relevant to show that Thompson knew that his license had been revoked. And, statements made during the commission of an offense are admissible as part of the res gestae.[5] Thompson has not shown error.

3. According to Thompson, the trial court erred in admitting the habitual violator license revocation notice because: (a) it was not furnished to the defense until a few days before trial; (b) the notice does not describe the grounds for the revocation; (c) the acknowledgment of service portion of the notice is illegible; (d) the substantive contents of the document are hearsay; (e) the notice indicates that it was served by a City of Brunswick police officer, rather than an agent of the Department of Public Safety; and (f) the notice was irrelevant since it shows service by a police officer, while the indictment alleged service by the Department of Public Safety. This enumeration presents no grounds for reversal.

Thompson fails to support his argument regarding the notice's absence of a description of the grounds for the revocation with any citation to authority. And, other than to state generally that his due process rights were violated under the Georgia Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, Thompson cites no authority and makes no argument supporting his contentions regarding the furnishing of the notice to the defense or the legibility of the notice. This is not the type of meaningful argument contemplated by Court of Appeals Rule 27 (c) (2), and the claims made in those parts are deemed abandoned.[6]

His challenges to the admissibility of the notice based on hearsay, service by the officer, and relevance were not raised in the trial court. These arguments, therefore, have been waived.[7]

4. Thompson contends that the trial court erred in allowing the local police officer to testify that he personally served Thompson with the habitual violator license revocation notice when the law requires service by the Georgia Department of Public Safety, the indictment alleges that he was served by the Georgia Department of Public Safety, and the officer was not credible given his inability to recall specific circumstances surrounding service of the notice.

---

[4] *Parrish v. State*, 237 Ga. App. 274, 281 (6) (514 SE2d 458) (1999).
[5] See *Hardegree v. State*, 230 Ga. App. 111-112 (1) (495 SE2d 347) (1998).
[6] See *Reed v. State*, 246 Ga. App. 373, 374, n. 3 (540 SE2d 636) (2000).
[7] See *Valentine v. State*, 229 Ga. App. 791 (2) (495 SE2d 116) (1997).

As to the validity of personal service by a local law enforcement officer, Thompson relies on statutory language that "the department shall forthwith notify such person that . . . [he] has been declared by the department to be a habitual violator."[8] The statute also provides that "notice may be given by personal service upon such person."[9] The statute does not require that personal service be performed by an employee of the Georgia Department of Public Safety. In fact, contrary to Thompson's claim, the law does authorize local law enforcement officers to personally serve the habitual violator license revocation notice.[10]

We reject Thompson's argument that, besides the Department of Public Safety, the statute only allows a judge or prosecutor to serve a person with the notice. The provision at issue is *"(i)n addition* to the [other] procedure set forth in [OCGA § 40-5-58 (b)]."[11] As already mentioned, local police officers can also validly serve the notice. The service required by the statute was accomplished when the police officer personally delivered the notice to Thompson.[12]

Thompson is not correct that evidence regarding service by the police officer is irrelevant given the indictment's allegation of service by the Department of Public Safety. As discussed above, service could properly be made on behalf of the department by a local police officer. The testimony was relevant to the issue of whether Thompson was served with the notice. The allegation as to which public safety entity actually served the notice was not material to the indictment.

The question of whether the officer should have been believed given his inability to remember certain aspects of the service involves credibility and is for the trier of fact to decide.[13]

5. The trial court did not err in denying Thompson's motion for a directed verdict of acquittal based on the state's failure to prove the indictment's allegation that the Department of Public Safety, rather than a Brunswick police officer, served him with the notice.

As discussed above, a local law enforcement officer can properly serve such a notice.[14] The elements of the crime charged do not include a requirement that personal service be accomplished by any particular public safety entity. Therefore, the fact that a local public safety officer served the notice rather than an employee of the Geor-

---

[8] OCGA § 40-5-58 (b).

[9] Id.

[10] *Waits v. State,* 194 Ga. App. 284 (390 SE2d 296) (1990); *Hardison v. Booker,* 179 Ga. App. 693, 694 (2) (347 SE2d 681) (1986); *Stowe v. State,* 176 Ga. App. 169 (335 SE2d 431) (1985).

[11] (Emphasis supplied.)

[12] See *Hardison,* supra.

[13] See *Frei v. State,* 252 Ga. App. 535, 536-537 (2) (a) (557 SE2d 49) (2001).

[14] See *Waits,* supra; *Stowe,* supra.

gia Department of Public Safety, as alleged in the indictment, is not a fatal variance.[15]

Georgia's courts do not apply an overly technical interpretation of the fatal variance rule.[16] Instead, our courts focus on materiality and determine whether there has been such a variance as to affect the substantive rights of the accused.[17] If the allegations definitely inform the accused of the charges against him so as to enable him to present his defense and not be taken by surprise, and the allegations protect the accused from another prosecution for the same offense, the appellate courts will not find a fatal variance between the allegations and the proof.[18] Thompson was definitely informed of the charge against him, he was not taken by surprise, and he was protected from another prosecution for the same offense. There was no fatal variance in this case.

6. Thompson complains generally that the trial court erred in instructing the jury regarding the habitual violator notice. Yet he does not explain how the charge was erroneous, he gives no indication as to where in the transcript the alleged error can be found, and he neglects to include any citation to legal authority. Therefore, this argument has not been preserved for appellate review.[19]

7. Thompson argues that the trial court should have, sua sponte, declared a mistrial or given curative instructions after the prosecutor, in his closing remarks, undermined the presumption of innocence, lessened the state's burden of proof, and shifted the burden of proof to Thompson.

Thompson takes issue with these three remarks by the prosecutor: "Now, if you don't want to believe when you first start out you'll never believe"; "If [the revocation notice] were unclear, he shouldn't have signed it"; and the jurors could convict Thompson if they "thought" he was guilty.[20]

Because Thompson failed to object to the closing argument at all, he can only obtain relief if he can show that there is a reasonable probability that the allegedly improper argument changed the result of the trial.[21] This he has not shown.

In this case, it is undisputed that Thompson received actual notice of the habitual violator license revocation before he was

---

[15] See generally *Valentine*, supra at 791 (1).
[16] *Woods v. State*, 244 Ga. App. 359-360 (535 SE2d 524) (2000).
[17] Id.
[18] Id.
[19] See *Hudson v. State*, 246 Ga. App. 335-336 (2) (539 SE2d 860) (2000).
[20] We have not found in the transcript the exact language referenced in the third quotation. We will presume it is taken from this portion of the argument: "[Y]ou say to yourself, I think the defendant's guilty the State has met its burden."
[21] See *Presnell v. State*, 274 Ga. 246, 255 (19) (551 SE2d 723) (2001).

stopped, and that he drove a car knowing his license had been revoked. The trial court properly charged the jury on the presumption of innocence and instructed the jury that the state bears the burden of proving each element of the crime beyond a reasonable doubt. So, even if the prosecutor's argument was improper, it is unlikely that the argument changed the result of the trial. Therefore, reversal is not required.[22]

8. Thompson contends the trial court erred in denying his motion to suppress inasmuch as the officer was not justified in questioning him. He says that although the officer did not initially see the license plate when he pulled him over, he did see the license plate in the truck's window when he got near the truck's cab. Since the license plate was plainly visible at that point, Thompson urges, the officer was not justified in asking him to produce his driver's license. We disagree.

Investigative stops of vehicles are analogous to *Terry* stops and, therefore, must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.[23] What is required is that an officer have a "founded suspicion" as a basis from which a court can determine that the detention was not merely arbitrary or harassing.[24]

OCGA § 40-2-41 requires that any vehicle being driven upon the highway display a license plate, and that the plate "shall be fastened to the rear of the vehicle" and "shall be at all times plainly visible."

In this case, the officer pulled Thompson's truck over because no license plate was visible when he looked at the truck's rear bumper, which is where, he testified, the license plate is supposed to be. Because the initial stop was based on a suspected violation of OCGA § 40-2-41, and was not merely arbitrary or harassing, the stop was valid.[25]

We are not convinced by Thompson's argument that the officer was not justified in asking him for his driver's license because the officer knew at that time that there was no license plate violation. Affixing a license plate to the cab window of a pickup truck is not necessarily compliance with the statutory requirement that the license plate be placed *at the rear* of the vehicle, or that it be plainly visible. Even if Thompson's license plate placement was not a clear violation of OCGA § 40-2-41, the officer had a reasonable, articulable suspicion that a traffic violation had been committed.[26] The fact that

[22] See *Shields v. State*, 272 Ga. 32, 33 (2) (526 SE2d 845) (2000).

[23] *Chiasson v. State*, 250 Ga. App. 63, 64 (1) (549 SE2d 503) (2001).

[24] *Johnson v. State*, 230 Ga. App. 535, 537 (1) (496 SE2d 785) (1998).

[25] See generally *Nelson v. State*, 247 Ga. App. 455-456 (1) (544 SE2d 189) (2001).

[26] Id.

the officer did not issue a citation for a license plate violation does not show that there was no violation or basis for the stop.[27] The trial court did not err in denying Thompson's motion to suppress.

9. Thompson contends the trial court erred in considering his three prior habitual violator convictions for enhancement of punishment because he was unrepresented by counsel when he entered guilty pleas in those cases. We disagree.

During sentencing, the state introduced certified copies of three prior habitual violator cases in which Thompson entered guilty pleas. The state acknowledged that Thompson did not have the benefit of an attorney in the prior cases, but suggested that the trial court use the convictions, which are felonies, in order to determine how much of the sentence should be probated. Defense counsel objected, arguing that the convictions should not be considered by the court for any purpose at sentencing because Thompson did not have the benefit of counsel in the earlier cases. Defense counsel urged that Thompson was entitled to be represented by an attorney in those felony cases, and that there was no evidence in the record proving that he knowingly, intelligently, and voluntarily waived his right to counsel. Over defense counsel's objection, the trial court considered the prior convictions and sentenced Thompson to five years, three of which would be served in confinement.[28]

In general, felony convictions obtained when a defendant was not represented by or did not waive the right to an attorney may not be used to enhance punishment under a recidivist statute,[29] or to otherwise determine the severity of a sentence.[30] The prohibition against using prior convictions in which the defendant was unrepresented for sentencing purposes does not apply where the record shows a valid waiver of the right to counsel.[31]

Here, the record shows that Thompson signed forms in all three prior cases expressly indicating that he waived his right to be represented by an attorney. And, in the most recent prior offense, the trial court also entered an order, signed by the judge and Thompson, indicating in more detail that Thompson understood his rights, including the right to be represented by counsel, that Thompson knowingly and voluntarily waived that right, and that the trial court ascertained that Thompson understood and intelligently and voluntarily waived

---

[27] See *Castillo v. State*, 232 Ga. App. 354, 356 (502 SE2d 261) (1998).

[28] OCGA § 40-5-58 (c) (1) provides for a punishment of imprisonment for one to five years.

[29] See *Burgett v. Texas*, 389 U. S. 109, 114-115 (88 SC 258, 19 LE2d 319) (1967); *Blaylock v. Hopper*, 233 Ga. 504, 505 (1) (212 SE2d 339) (1975); *Tanner v. State*, 230 Ga. App. 77, 79 (4) (495 SE2d 315) (1998).

[30] *United States v. Tucker*, 404 U. S. 443, 447 (92 SC 589, 30 LE2d 592) (1972).

[31] See *Blaylock*, supra at 506.

the right to counsel. Upon such a showing, the presumption that the convictions were validly obtained is applied, and the burden shifts to Thompson to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas.[32] Thompson has not shown or even alleged, below or on appeal, any infringement or irregularity in the taking of the pleas. A silent record or mere naked assertion that the earlier pleas were constitutionally infirm is simply not enough to prohibit the consideration of the prior convictions.[33]

This Court's recent decision in *Tucci v. State*[34] does not require a contrary result. In that case, the defendant pled not guilty to a felony traffic charge and signed a plea form stating she was willing to proceed to trial without an attorney and was waiving her right to an attorney. There was nothing in the form or record indicating that she was made aware of the dangers of proceeding to trial pro se. This Court reversed her conviction, holding that no valid waiver of counsel had been established. The Court stated that "as far as pro se defendants *who go to trial* are concerned,"[35] waiver forms must contain more than the conclusions that a defendant has knowingly and voluntarily chosen to waive counsel in the entry of a plea. The forms must include information which shows that the " 'knowing' prong" has been satisfied "when a defendant *goes to trial* pro se"; in other words, the forms must show in such cases that the defendant has been made aware of "the dangers of pro se trial representation."[36] The Court went on to spell out the dangers of self-representation at trial, such as the trial court's enforcement of the rules of evidence, the need to make strategic decisions regarding voir dire and the calling of witnesses, and the need to preserve issues for appeal. In its decision, the Court repeatedly emphasized that its holding applies where a defendant pleads not guilty and elects to represent himself *at trial*. Nothing in *Tucci* warrants an extension of its narrow rule to this case. Moreover, because Thompson did not show (or even allege) any infirmity or irregularity in the taking of the guilty pleas as required by *Nash*,[37] he did not meet the burden of proving the prior pleas were invalid.

---

[32] *Nash v. State*, 271 Ga. 281, 284-285 (519 SE2d 893) (1999).

[33] See id. at 285; see generally *Stargell v. State*, 183 Ga. App. 434, 435-436 (2) (359 SE2d 205) (1987) (prior conviction can be used in determining severity of offense where record of guilty plea reflects finding of trial judge that defendant knew of right to counsel and knowingly chose to proceed without attorney). Compare *Tanner*, supra (recidivist sentence improperly based on prior convictions where state introduced no evidence regarding whether defendant had attorney or even pled guilty).

[34] 255 Ga. App. 474 (565 SE2d 831) (2002).

[35] (Emphasis in original.) Id. at 476 (1).

[36] (Emphasis in original.) Id.

[37] Supra.

Interestingly, in *Parke v. Raley*,[38] the United States Supreme Court discussed the alleged tension between a trial court requiring that a defendant in a recidivism proceeding produce evidence to support his claim that he was not advised of his rights before entering a guilty plea in a prior case, and the *Boykin v. Alabama*[39] decision, in which the Supreme Court reversed a conviction based on a guilty plea because the record did not affirmatively show that the plea was knowing and voluntary. The *Parke* court said that there was no tension between the two because *Boykin* involved the direct review of a conviction based on a guilty plea, while the defendant in the recidivism proceeding had not appealed the earlier convictions.[40] The Court noted that the prior convictions became final years earlier and held that the question of their validity could not be revisited in a separate recidivism proceeding.[41]

Although this case does not arise in the context of a recidivism proceeding, the Court's reasoning in *Parke* is compelling. Thompson never appealed his earlier convictions, and they became final years ago. Yet he seeks to have those convictions declared invalid in a separate proceeding in order to prevent the court from considering the convictions in determining his sentence. "To import *Boykin's* presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights."[42] As in *Parke*, there is no good reason to suspend the presumption of regularity here.

Therefore, this enumeration presents no grounds for reversal.
*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED JULY 11, 2002 —
RECONSIDERATION DENIED JULY 29, 2002 

*Kevin R. Gough*, for appellant.
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney*, for appellee.

---

[38] 506 U. S. 20, 29 (II) (B) (113 SC 517, 121 LE2d 391) (1992).
[39] 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).
[40] *Parke*, supra.
[41] Id.
[42] Id.