S09G1131. SUMTER ELECTRIC MEMBERSHIP CORPORATION v. GEORGIA POWER COMPANY et al.

(690 SE2d 607)

THOMPSON, Justice.

In 1973 the legislature enacted the Georgia Territorial Electric Service Act (OCGA § 46-3-1 et seq.) to provide a mechanism for assigning territories to electrical suppliers. Under the act, the Public Service Commission (PSC) was authorized to assign territories according to specific statutory criteria.

In 1975 the PSC assigned the territory around Leesburg, Georgia to Georgia Power Company. In 2002 Georgia Power learned that Sumter Electric Membership Corporation (Sumter) intended to provide electricity to two office buildings near Leesburg. The buildings lie within Georgia Power's assigned service area, but within 500 feet of an electrical transmission line which Georgia Power sold in

1982 to a predecessor of Sumter.[1]

Georgia Power petitioned the PSC to stop Sumter from providing electrical service to the office buildings, claiming it has exclusive rights to serve customers in the area. Sumter asserted it had a "corridor right" to service the buildings based on its ownership of the transmission line. The PSC ruled in favor of Sumter and the trial court affirmed that decision. The Court of Appeals reversed. *Ga. Power Co. v. Ga. Public Svc. Comm.*, 296 Ga. App. 556 (675 SE2d 294) (2009). This Court granted certiorari and posed this question: Whether the Court of Appeals erred in its interpretation of OCGA § 46-3-4 (4).

The "corridor rights" provision of the Territorial Act (OCGA § 46-3-4 (4)) provides:

> A line of an electric supplier which extends into or completely crosses a land space in which *another* electric supplier owns a preponderance of the lines may nevertheless be considered as the basis for assigning or declaring unassigned land space related thereto; but, unless such line so occasions an assignment or an unassignment, then, from and after the date of the assignment to an electric supplier of the geographic area within which such line is enclosed and based upon the location of *both suppliers'* lines on that date, the electric supplier owning such enclosed line shall have the exclusive right to extend and continue furnishing service to all new premises locating at least partially within 500 feet of such line and wholly more than 500 feet from the assignee electric supplier's lines and shall have the right, if chosen by the consumer utilizing such premises, to extend and continue furnishing service to new premises locating at least partially within 500 feet of both electric suppliers' lines. . . .

(Emphasis supplied.)

By its plain terms (the references to "another" supplier and "both suppliers"), this "corridor rights" provision applies only when two suppliers owned lines in a geographic area at the time of assignment to a predominant supplier. In that situation, the non-predominant electric supplier obtains "corridor rights" pursuant to paragraph (4). In this case, Georgia Power owned *all* of the lines at

---

[1] Georgia Power sold the transmission line to Oglethorpe Power. Oglethorpe was restructured and it transferred its interest in the line to Georgia Transmission Corporation (GTC). The parties stipulated that as an owner of GTC, Sumter has a proprietary and possessory interest in the line.

issue when the geographic area was assigned in 1975, and corridor rights did not suddenly arise seven years later, when Georgia Power sold a line to Oglethorpe.

This conclusion is supported by examining paragraph (4) in context, i.e., by considering the entire statute. *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81) (1970). In this regard, we note that the statute was enacted in 1973 to enable the PSC to designate which electric suppliers would provide service in unincorporated areas. This legislation was intended to minimize the duplication of electrical facilities in a geographic area for the public benefit. *City of Calhoun v. North Ga. Elec. Membership Corp.*, 233 Ga. 759, 768 (213 SE2d 596) (1975). To that end, the legislature called upon the PSC to carry out its mandate "as rapidly as it is administratively practicable to do so." OCGA § 46-3-4. It then listed six criteria which the PSC was to consider when making assignments. Paragraph (4) instructs the PSC as to how to make an assignment when more than one electrical supplier occupies a geographic area. It comes on the heels of paragraph (3), which speaks of paragraph (4) and notes that it comes into play where more than one electric supplier owns lines in a territory at the time of assignment, and the PSC assigns the territory to a predominant supplier, thereby enclosing a line of a non-predominant supplier. Thus, as this Court previously observed, "under the standards set forth in the Act, even though a particular area may be assigned to an electric supplier, other electric suppliers *already* serving customers in that area may continue to serve those customers as well as new customers located near their lines." (Emphasis supplied.) *City of Calhoun v. North Ga. Elec. Membership Corp.*, supra at 767. Inasmuch as Sumter (or its predecessor, Oglethorpe Power) was not already serving customers in the assigned territory *at the time of assignment* to Georgia Power, it is not entitled to serve new customers located near its line.

Although the PSC's interpretation of an act is entitled to great deference, *City of LaGrange v. Ga. Power Co.*, 185 Ga. App. 60, 63 (363 SE2d 286) (1987), this case does not involve interpretation of a technical question necessary to the administration of a law. It simply requires a judicial determination as to whether the PSC correctly interpreted the plain meaning of the statute. *Sawnee Elec. Membership Corp. v. Ga. Public Svc. Comm.*, 273 Ga. 702, 705-706 (544 SE2d 158) (2001). We conclude that it did not.

Because there was only one supplier when the territory was assigned to Georgia Power, no entity obtained corridor rights. Thus, Sumter is not entitled to extend its line to new customers and we answer the certiorari question in the negative.

*Judgment affirmed. All the Justices concur.*

NAHMIAS, Justice, concurring.

I concur fully in the majority opinion and write separately only to highlight one point. The parties in this case have focused much of their attention on the question of whether OCGA § 46-3-4 (4) allows corridor rights associated with an electrical line to be conveyed by the owner of that line at the time of assignment to subsequent owners. Because no corridor rights were ever created for the electrical line at issue in this case, the Court need not and does not decide that question today.

DECIDED MARCH 1, 2010.

*Sutherland, James A. Orr, Jennifer N. Ide, Benjamin C. Morgan*, for appellant.

*Troutman Sanders, Robert P. Edwards, Jr., Thurbert E. Baker*, Attorney General, *Alex F. Sponseller, Daniel S. Walsh*, Assistant Attorneys General, for appellees.