**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 5, 2013**

# In the Court of Appeals of Georgia

A13A0154. EXCELSIOR ELECTRIC MEMBERSHIP CORPORATION v. GEORGIA PUBLIC SERVICE COMMISSION et al.

ANDREWS, Presiding Judge.

This case is before us for the second time after remand to the Superior Court for a determination of whether one of Excelsior Electric's arguments on appeal was properly raised before the Public Service Commission (PSC). The Superior Court determined that the argument was not raised and Excelsior appeals that determination as well as the original judgment. After reviewing the record, we conclude that there was no error and affirm.

The underlying facts are undisputed and are set out in detail in the Hearing Officer's Decision. The premises at issue, the Campus Club Apartments in Statesboro, is located within Excelsior's assigned service territory and consists of

multiple detached buildings. The premises had a connected electrical load over 900 kilowatts at the time of initial full operation, qualifying as a customer choice load under the "large load exception" provision which states that "an electric supplier other than the primary supplier may provide service to "one or more new premises (but if more than one, such premises must be located on the same tract or on contiguous tracts of land), if utilized by one consumer and having single-metered service and a connected load which, at the time of initial full operation of the premises, is 900 kilowatts or greater. . . ." OCGA § 46-3-8 (a).

Under this large load exception, the owner of the complex selected Georgia Power as its electrical supplier and Georgia Power began servicing the premises in December 2001. The developer and original owner, Stokes Property Company, continued single-metered service during the entire time of its ownership, through August 2004, when the complex was sold. The new owners eventually installed meters for each apartment unit, assessing utility service fees to each unit, while Georgia Power continued to serve the complex through a single meter.

Excelsior filed a complaint alleging that the conversion of the complex's metering from a single master meter to individual meters at each apartment, coupled with individual and independent calculation of charges for each apartment's electrical

2

service, eliminated Georgia Power's right to serve the apartment complex under the large load exception because none of the individually metered apartments had a connected load exceeding 900 kilowatts. Therefore, Excelsior requested that the PSC find that Georgia Power was in violation of the Territorial Act; that Excelsior was the lawful supplier of electricity to the apartment complex; and, order Georgia Power to disconnect and transfer service.

Georgia Power moved to dismiss, or in the alternative, for summary judgment, arguing that, having lawfully established service to a premises, it may continue serving the premises under OCGA § 46-3-8 (b), the "grandfather clause." That Code section provides in part that:

> Notwithstanding any other provision of this part, but subject to subsections (c) and (h) of this Code section, every electric supplier shall have the exclusive right to continue serving any premises lawfully served by it on March 29, 1973, or thereafter lawfully served by it pursuant to this part, including any premises last and previously served by it which before or after March 29, 1973, have become disconnected from service for any reason, and including premises which before or after March 29, 1973, have been destroyed or dismantled and which are reconstructed after March 29, 1973, in substantial kind on approximately the same site.

OCGA § 46-3-8 (b).

Excelsior responded and filed its own motion for summary judgment, contending that under *Sawnee Electric Membership Corp. v. Georgia Public Service Comm.*, 273 Ga. 702, 705 (544 SE2d 158) (2001), the aggregation of separately metered apartments by means of a master meter would not meet the large load exception.

The Hearing Officer determined that, as defined by the Territorial Act, OCGA § 46-3-3 (6), "[i]t is clear that by law the individual units at Campus Club are each new premises.[1]" The Hearing Officer concluded, however, that, under the grandfather clause, Georgia Power had the right to continue service to the apartments.

Excelsior petitioned for a full commission review of the Hearing Officer's decision. After a hearing, the PSC issued an order adopting the Hearing Officer's Initial Decision, stating that it agreed that the individual units at Campus Club are

---

[1] "'Premises' means the building, structure, or facility to which electricity is being or is to be furnished, provided that two or more buildings, structures, or facilities which are located on one tract or contiguous tracts of land and are utilized by one electric consumer shall together constitute one premises; provided, however, that any such building, structure, or facility shall not, together with any other building, structure, or facility, constitute one premises if the permanent service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure, or facility; provided, further, that an outdoor security light, or an outdoor sign requiring less than 2200 watts, shall not constitute a premises." OCGA § 46-3-3 (6).

4

each new premises and concluding that the grandfather clause allowed Georgia Power to continue service to the apartments because there was no authority for determining that a lawful extension of service could be undone by a subsequent metering change occurring years later. Accordingly, there was no basis under the Territorial Act upon which to require Georgia Power to relinquish service to the apartment complex.

Excelsior petitioned the Superior Court for judicial review of the PSC's final decision. The Superior Court held that "Respondent [the PSC] properly applied the 'grandfather clause' established by O.C.G.A. § 46-3-8 (b) which is dispositive of the issue in dispute."

Excelsior then filed its first appeal in this Court. Among its arguments was the claim that Georgia Power was not entitled to the protection of the grandfather clause because it no longer provides "retail electric service" as defined by the Territorial Act. Excelsior pointed to the relevant portion of the grandfather clause which states that although the supplier has the exclusive right "to continue serving any premises lawfully served by it, the grandfather clause only protects the utility that provides "service", defined in OCGA § 46-3-3 (9) as retail electric service and not wholesale service and sales for resale. Excelsior contended that Georgia Power's service to the complex was now wholesale or sale for resale and therefore was excluded.

5

Georgia Power and the PSC argued that this issue was waived because it was not raised during the administrative proceedings as required by OCGA § 50-13-19 (c).[2] This Court found that although Excelsior had "briefly" brought up the retail electric service or sale for resale argument before the PSC Hearing Officer, the Hearing Officer had not explicitly ruled on the issue; furthermore, Excelsior did not raise the issue in its brief in support of its petition for full Commission review of the Hearing Officer's Initial Decision, nor in its reply brief, and the PSC had not made any explicit finding on the issue. Accordingly, we remanded the case to the Superior Court for "determination of the waiver issue." The remand order provided that "once this issue is resolved, the parties may, within 30 days, appeal any adverse ruling resulting from the determination of the waiver and resale issue, as well as the order and issues now appealed in this case, to the extent those issues remain extant."

The Superior Court issued a Final Order After Remand on May 22, 2012, finding that "the sale for resale argument was not properly raised and urged before the Public Service Commission." Excelsior now appeals.

---

[2] The PSC also pointed out that there is no evidence in the record that Georgia Power is selling electricity to the premises owner at a wholesale rate or that the owner has become a retail seller of electricity.

Neither our review nor the trial court's review of the PSC's decision is de novo. They are reviews made with deference to the factual findings of the agency. The reviewing courts may reject those findings only if they are "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 50-13-19(h)(5), (6); *Dept. of Community Health &c. v. Gwinnett Hosp. System,* 262 Ga. App. 879, 882-883, 586 SE2d 762 (2003). "[O]ur duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the ... administrative agency." (Citation and punctuation omitted.) *Sawyer v. Reheis,* 213 Ga. App. 727, 729(1), 445 SE2d 837 (1994). Moreover, the superior courts cannot substitute their judgment for that of the hearing officer as to the weight of the evidence on questions of fact. *Emory Univ. v. Levitas,* 260 Ga. 894, 898(1), 401 SE2d 691 (1991).

*Douglas Asphalt Co. v. Georgia Public Service Comm.*, 263 Ga. App. 711, 712 (589 SE2d 292) (2003).

We note also that "[u]nder the APA, the Commission is the finder of fact and weighs the credibility of the evidence," *Georgia Public Service Comm. v. Southern Bell*, 254 Ga. 244, 246 (327 SE2d 726) (1985), and "[t]he court in reviewing administrative decisions shall not substitute its judgment for that of the board if there is any evidence to support its findings." Id. Further, "[t]he PSC, as the agency charged

7

with . . . enforcement and administration of the Georgia Territorial Electric Service Act, is entitled to great deference in its interpretation of the Act." *City of LaGrange v. Georgia Power Co.*, 185 Ga. App. 60, 63 (363 SE2d 286) (1987), and "[t]he administrative interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight." Id.

1. Excelsior raises the argument that because new meters were installed in the apartments, they became "new premises" for purposes of the Act and were no longer a portion of the one premises initially served by Georgia Power. Thus, Excelsior argues, each apartment at Campus Club is a new premises as defined by the Act and cannot constitute "one premises" to satisfy the large load exception to the Act. Therefore, it claims that it has the exclusive right to provide service to these new premises. Excelsior cites *Sawnee Electric Membership Corp. v. Ga. Public Service Comm.*, 273 Ga., supra at 705, as authority for this argument. But, as the hearing officer and the PSC determined, *Sawnee* does not apply in this instance. In *Sawnee* the Court held that because "the electric service to the individual apartments is separately metered and the charges for service to each tenant are calculated independently, the complex cannot be considered "one premises" within the statutory definition." Id. at 705. But as the PSC pointed out, in *Sawnee*, the test of what

8

constitutes a premises was applied at the time the customer made its selection of electrical suppliers, and the "grandfather clause" was therefore not part of the consideration. Thus, nothing in *Sawnee* requires that Georgia Power discontinue service that was lawfully provided at the time the determination was made.

2. The grandfather clause allows Georgia Power to continue serving newly created premises. The clause gives suppliers the right to continue serving any premises lawfully served by it on March 29, 1973 or thereafter, with four exceptions. Those are: (1) failure to provide adequate or dependable service; (2) a requested transfer of service; (3) municipal acquisition and condemnation; and, (4) where a premises has been destroyed or dismantled and not reconstructed in substantial kind. See OCGA § 46-3-8.

The Hearing Officer found that none of these conditions existed at the time and it was never alleged that they did. The PSC agreed and there was evidence in the record to support this decision. See, e.g., *Georgia Public Service Comm.*, supra at 246.

3. Excelsior argues that the Superior Court erred on remand when it found that Excelsior did not properly "urge"[3] before the commission that the grandfather clause does not apply because the term "service" as used in the clause, excludes "sales for resale." The law is that "a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision." *Cerulean Companies v. Tiller*, 271 Ga. 65, 66 (516 SE2d 522) (1999) "The scope of judicial review is limited to those objections which were presented to the agency." *Southern Bell*, supra, *citing Dept. of Public Safety v. MacLafferty*, 230 Ga. 22 (1973).

OCGA § 50-13-19 (b) provides in pertinent part that "[c]opies of the petition shall be served upon the agency and all parties of record. The petition shall state the nature of the petitioner's interest, the fact showing that the petitioner is aggrieved by the decision, and the ground as specified in subsection (h) of this Code section upon

---

[3] OCGA § 50-13-19 (c) provides: Irrespective of any provisions of statute or agency rule with respect to motions for rehearing or reconsideration after a final agency decision or order, the filing of such a motion shall not be a prerequisite to the filing of any action for judicial review or relief; provided, however, that no objection to any order or decision of any agency shall be considered by the court upon petition for review unless such objection has been urged before the agency.

which the petitioner contends that the decision should be reversed or modified." The Georgia Administrative Code provides:

> All applications, petitions and complaints made to the Georgia Public Service Commission must plainly and distinctly state the grounds thereof, all being set forth in writing. In like manner, all defenses must be distinctly made in writing and must plainly and distinctly state the grounds thereof. These specifications may be accompanied, if the parties so desire, by any explanation or argument or by any suggestion, touching the proper remedy or policy. The parties may also be heard in person, or by attorney or by written argument, upon such written statements being first filed.

Ga. Comp. R. & Regs. 515-2-1-.04 (1).

Excelsior acknowledges that it did not raise the issue in writing before the PSC. It contends that it raised the "sale for resale" argument orally at the hearing before the PSC but admits that there is no transcript of the hearing. In any event, the rules clearly require that all grounds must be plainly and distinctly made in writing. It is undisputed that this was not done. Accordingly, Excelsior has not shown that the Superior Court erred in determining that this issue was waived. See *Georgia Public Service Comm. v. Southern Bell*, 254 Ga. 244, 247 (327 SE2d 726) (1985) (the scope of judicial review is limited to those objections which were presented to the agency);

11

*Georgia Power Co. v. Georgia Public Service Comm.*, 196 Ga. App. 572, 573 (396 SE2d 562) (1990) (failure to raise the issue before the PSC precluded the court's consideration of it).

*Judgment affirmed. Dillard and McMillian, JJ., concur.*