**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 11, 2019**

# In the Court of Appeals of Georgia

A18A1525, A18A1526. INFINITE ENERGY, INC., et al. v. DO-057 MARIETTA NATURAL GAS, LLC, et al.  DO-058

A18A1527, A18A1528. GEORGIA PUBLIC SERVICE DO-059 COMMISSION et al. v. MARIETTA NATURAL GAS, LLC, DO-060 et al.

DOYLE, Presiding Judge.

These consolidated appeals arise from an application for a natural gas certificate of authority filed by Marietta Natural Gas, LLC ("MNG"), wholly owned by the Marietta Board of Light and Waterworks ("BLW"), requesting the Georgia Public Service Commission ("PSC") to certify MNG as a natural gas marketer that may provide retail natural gas service outside the City of Marietta ("the City") pursuant to the Natural Gas Competition and Deregulation Act ("the Act").[1] Four for-

---

[1] See OCGA § 46-4-150 et seq.

profit certified natural gas marketers (Infinite Energy, Inc.; Gas South, LLC; SCANA Energy Marketing, Inc.; and SouthStar Energy Services, Inc., d/b/a Georgia Natural Gas (collectively "the Intervenors")) intervened in MNG's application process before the PSC, filing a motion to dismiss the application.[2] In response to this intervention, the Municipal Gas Authority of Georgia[3] ("Municipal Gas"), with whom MNG intended to contract to supply gas to any future customers, also intervened in the application process, arguing against the motion to dismiss.

The PSC staff prepared a recommendation for the PSC, explaining that based on past treatment of municipalities as "persons," the PSC should deny the motion to dismiss and find that MNG could be certified as a marketer under the Act, and move on to the task of reviewing MNG's application for fitness in order to determine whether MNG should be certified as a marketer. Over this recommendation, however, the PSC dismissed MNG's application, with one dissent.

MNG and Municipal Gas separately petitioned the Fulton County Superior Court for review of the PSC's order, arguing that the PSC erred by dismissing MNG's

[2] At the time MNG filed the application with the PSC, the BLW had a contract with Gas South to act as the preferred gas marketer to the City of Marietta and its residents.

[3] See OCGA § 46-4-80 et seq., enacted by Ga. L. 1987, p. 745, § 1.

2

application and asking the trial court for declaratory judgment on the legal questions presented; those petitions were consolidated by the superior court. After a hearing, the superior court entered an order dismissing the petitions as they related to the requests for declaratory judgments but granting MNG and Municipal Gas's requests to reverse the PSC, finding that the PSC erred by granting the Intervenors' motion to dismiss because (1) MNG qualified as a "person" under OCGA § 46-4-152 (14); (2) the City was authorized to create MNG; and (3) statutory authority allowed Municipal Gas to contract to supply gas to MNG. These appeals followed.

The PSC and Interveners separately appeal from the superior court's decision, and we have consolidated the appeals for review. Collectively, Appellants argue that the superior court erred by reversing the PSC's order and by finding that (1) MNG is a "person" that can be certified as a marketer under the Act; (2) the Marietta city charter and pertinent enabling legislation authorized the City and BLW to create a natural gas utility; (3) Municipal Gas had statutory authority to contract with MNG; and (4) the PSC's decision not to certify MNG as a marketer was contrary to the intent of the Act as a matter of law. For the reasons that follow, we reverse the superior court.

Generally speaking, "[t]he interpretation of statutes, ordinances, and charters presents a question of law for the court[] and is subject to de novo review on appeal."[4] That said,

> [t]he appropriate standards for judicial review of agency decisions are set forth in OCGA § 50-13-19 (h), which provides [that t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Pursuant to this Code section, courts review agency findings of fact to determine whether they are supported by any evidence. And in considering agency conclusions of law, courts conduct a de novo review.[5]

---

[4] (Punctuation omitted.) *Ivey v. McCorkle*, 343 Ga. App. 147, 148 (806 SE2d 231) (2017), quoting *Lue v. Eady*, 297 Ga. 321, 326 (2) (a) (773 SE2d 679) (2015).

[5] (Footnotes and punctuation omitted.) *Infinite Energy v. Ga. Public Svc. Comm.*, 257 Ga. App. 757, 758 (1) (572 SE2d 91) (2002).

Even though we generally apply "great deference" to "the PSC's interpretation of an act . . . , [if a] case does not involve interpretation of a technical question necessary to the administration of a law [and] simply requires a judicial determination as to whether the PSC correctly interpreted the plain meaning of the statute,"[6] then "we are authorized to make an independent determination as to whether the interpretation of the administrative agency correctly reflects the plain language of the statute and comports with the legislative intent."[7]

In 1997, the legislature passed the Gas Act in order to establish "a new regulatory model for the natural gas industry in Georgia to reflect the transition to a reliance on market based competition as the best mechanism for the selection and provision of natural gas services at the most efficient pricing."[8] Under this new scheme, the PSC approves "marketers," defined as "any person certificated by the [PSC] to provide commodity sales service or distribution services pursuant to [OCGA

---

[6] *Sumter Elec. Membership Corp. v. Ga. Power Corp.*, 286 Ga. 605, 607 (690 SE2d 607) (2010), citing *Sawnee Elec. Membership Corp. v. Ga. Public Svc. Comm.*, 273 Ga. 702, 705-706 (544 SE2d 158) (2001).

[7] *Sawnee Elec. Membership Corp.*, 273 Ga. at 706.

[8] OCGA § 46-4-151 (a) (1). See also Ga. L. 1997, p. 798, § 4.

5

§] 46-4-153 and ancillary services incident thereto"[9]; "person" is defined as "any corporation, whether public or private; company; individual; firm; partnership; or association, including a cooperative or an electric membership corporation."[10]

1. Pretermitting whether a municipality qualifies as a person under the Gas Act, we reverse the superior court's order and affirm the PSC's dismissal of MNG's application because the creation of MNG as an LLC wholly owned by the BLW is in derogation of the Marietta city charter. Because the charter required the BLW to create a wholly owned subsidiary in the form of a non-profit corporation rather than an LLC, its creation of an LLC was an ultra vires act, and the PSC was therefore authorized to dismiss MNG's application for certification.[11]

"[M]unicipal charters are originally enacted by the General Assembly, and their provisions . . . have the force of law."[12]

---

[9] OCGA § 46-4-152 (13).

[10] OCGA § 46-4-152 (14).

[11] We note that this holding is limited to the creation by the BLW of a subsidiary to operate utilities under the BLW's authority. We do not decide whether Marietta as a municipal corporation was authorized to create a subsidiary LLC.

[12] *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 26 (2) (b) (743 SE2d 381) (2013).

Pursuant to the charter,

[The BLW] shall have the power to create, build, operate, and supply water systems, electrical systems, cable television systems, sewer systems, telecommunications systems, and all other utilities. It shall make all contracts therefor for the [C]ity, shall have power to regulate the rates in the [C]ity, and shall supply the people of the [C]ity with such services at a fair and equitable rate. It shall have power to make any contracts with any other company supplying such services to the [C]ity, and to do any and all things necessary to the carrying out of the objects of this article. Said board shall take the proceeds of any bonds sold for the purpose of erecting systems and build and erect such systems to the best advantage of the [C]ity, and to this end, if it thinks best and proper, can purchase and acquire any property now owned and operated by any other company.[13]

The [BLW], with the concurrence of the Marietta City Council, may establish from time to time such *non-profit corporations* as it may deem necessary or desirable for the contractual operation of such utility function or functions as the board may see fit, provided that the directors of such corporations shall be appointed by the board with the concurrence of the Marietta City Council, for such terms as the board may deem desirable.[14]

---

[13] City of Marietta Charter, Sec. 5.2. (Ga. L. 1977, p. 3541, 3580-3581, Sec. 5).

[14] (Emphasis supplied.) City of Marietta Charter, Sec. 5.14. (Ga. L. 1994, p. 4267, 4269, Sec. 5; Ord. No. 5265, 3/9/94, Sec. 3).

The charter does not define "corporation," but states that "[t]erms not defined herein, but which are defined in the laws of the [S]tate shall have the meanings given in said laws."[15] The charter does define "company" as a "corporation."[16] Nevertheless, under the Georgia Nonprofit Corporation Code,[17] OCGA § 14-3-140 (6) defines a "corporation" as "a corporation other than a foreign corporation, incorporated under or subject to the provisions of this chapter."[18] Although circular, this section also defines a "limited liability company" as "any [LLC] filed under Chapter 11 of this Title,"[19] which specifically defines an LLC as an entity other than a non-profit corporation. An LLC is not incorporated under the Georgia Nonprofit Corporation Code[20] and is instead formed pursuant to the Georgia Limited Liability Act.[21]

---

[15] City of Marietta Charter, Sec. 1.2 (b). (Ga. L. 1977, p. 3541, 3545, Sec. 1).

[16] City of Marietta Charter, Sec. 1.2 (a) (5). (Ga. L. 1977, p. 3541, 3543, Sec. 1).

[17] OCGA § 14-3-101 et seq.

[18] A for-profit corporation is defined in this title as a "business corporation." OCGA § 14-3-140 (3).

[19] OCGA § 14-3-140 (19.1).

[20] OCGA § 14-3-101 et seq.

[21] See OCGA § 14-11-100 et seq., and specifically OCGA § 14-11-101 (5), defining corporation as "a corporation incorporated under Chapter 2 of [Title 14],"

Regardless of whether the Georgia code allows a municipal corporation to form an LLC in order to facilitate the business of the municipality, based on explicit wording in the city charter as stated above, the creation of MNG as a wholly owned subsidiary LLC of the BLW, rather than a nonprofit corporation, was a violation of the charter, which is an ultra vires act and is therefore void.[22] While the Georgia Limited Liability Act allows an LLC to have the same powers as others persons (including individuals and other business entities),[23] it does not confer on the City the power to create an LLC in derogation of the explicit wording of its charter, and it does not transform MNG as an LLC into a nonprofit corporation.[24] Accordingly, the

---

which addresses for-profit corporations, and OCGA § 14-11-101 (12), defining "[l]imited liability company" as "a limited liability company formed under [Chapter 11]."

[22] See *Mayor & Council of Americus v. Perry*, 114 Ga. 871, 885 (40 SE 1004) (1902) (explaining that an act by a municipal corporation to create an ordinance that is inconsistent with authority granted by the municipal corporation's charter is "ultra vires and void"). See also *City of Baldwin*, 293 Ga. at 29 (2) (d) (addressing municipal contract making and explaining that a municipal act done without power is ultra vires).

[23] See OCGA §§ 14-11-101 (19), 14-11-202.

[24] Cf. *Hosp. Auth. v. State Health Planning Agency*, 211 Ga. App. 407, 408 (2) (438 SE2d 912) (1993) ("a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them") (emphasis omitted).

9

PSC was authorized to dismiss MNG's petition on this basis, and we reverse the superior court's order.

2. The Appellants also contend that Municipal Gas does not have statutory authority to contract with MNG, but based on our holding in Division 1, supra, it is unnecessary for this Court to address this question or any of the parties' other enumerations of error.[25]

*Judgment reversed. Dillard, C. J., and Mercier, J., concur.*

---

[25] See *Jester v. Red Alligator, LLC*, 344 Ga. App. 15, 19 (1) (806 SE2d 920) (2017) ("[An issue] is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights. Thus, [an issue] is mooted [if] a [party] receives the relief it seeks. . . ."). See also *Black v. Nationstar Mtg., LLC*, 344 Ga. App. 217, 222 (b) (809 SE2d 487) (2018) (explaining that this Court has "no authority to render an advisory opinion").