**FOURTH DIVISION**
**DOYLE, P. J.,**
**BROWN and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0558. CENTRAL GEORGIA ELECTRIC MEMBERSHIP
    CORPORATION v. GEORGIA PUBLIC SERVICE
    COMMISSION et al.

COOMER, Judge.

The City of Jackson ("the City") filed a petition against Central Georgia Electric Membership Corporation ("Central Georgia") with the Georgia Public Service Commission ("the Commission") requesting a ruling that the City, and not Central Georgia, had the exclusive right under the Georgia Territorial Electric Service Act (the "Territorial Act"), codified at OCGA § 46-3-1 et seq., to provide electric service to a new gymnasium ("New Gym") constructed on a high school campus in Butts County, Georgia. A hearing was held, and the hearing officer assigned to the matter by the Commission issued findings of fact and conclusions of law in an initial decision. The hearing officer concluded that the City, and not Central Georgia, is

authorized to provide electricity to the New Gym. Central Georgia filed an application for review of the initial decision with the full Commission, and the Commission approved and adopted the initial decision. Central Georgia then filed a petition seeking judicial review of the Commission's decision in the Superior Court of Fulton County, which affirmed the decision of the Commission. Central Georgia appeals from the trial court's order, contending that the Commission erred by finding that the grandfather clause of the Territorial Act granted the City the right to serve the New Gym and by concluding that the New Gym is an expansion of the existing high school building. For the reasons that follow, we affirm.

Jackson High School, which is located in Butts County, was built in 1989. The high school is within the electric territory assigned to Central Georgia, but the Butts County Board of Education chose the City to provide electric service to the high school under the large load exception to the Territorial Act.[1] The City has provided electric service to the high school since it was constructed in 1989. In 2015, the New Gym was built next to Jackson High School. The New Gym is connected to the high school by a line of caulk and a construction joint between the two buildings' slabs.

---

[1] *See* OCGA § 46-3-8 (a).

2

The New Gym is used for physical education classes and sports. The architectural plans of the New Gym show that, as originally designed, electric service to the New Gym was to have been provided by the City through the same single metering arrangement through which the City serves Jackson High School. Initially, the City provided temporary electric service to the New Gym. However, during construction of the New Gym, a construction change directive was issued to change the electrical plans and construction for the New Gym to provide for service from a different electric supplier through a new meter and transformer. The Butts County Board of Education chose Central Georgia to provide electric service to the New Gym.

Before the New Gym was built, the City also provided electric service through a separate metering arrangement to a guard shack on the Jackson High School campus until it was removed in 2013. The City also provided electric service to six temporary classroom trailers that were located on the high school campus until they were removed in 2014. The six temporary trailers were each singly metered for about eight months. The temporary trailers were then served by the City through the same single metering arrangement through which it served the main school building until the trailers were removed in 2014.

3

"When an administrative agency decision is the subject of judicial review, judicial deference is to be afforded the agency's interpretation of statutes it is charged with enforcing or administering and the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch." *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 159 (2) (664 SE2d 223) (2008) (citations omitted). "Judicial review of an administrative decision requires the court to determine that the findings of fact are supported by 'any evidence' and to examine the soundness of the conclusions of law that are based upon the findings of fact." *Id.* at 160 (3) (citation omitted). A reviewing court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." OCGA § 50-13-19 (h).

> Our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency. Moreover, the superior courts cannot substitute their judgment for that of the hearing officer as to the weight of the evidence on questions of fact.

*Excelsior Elec. Membership Corp. v. Ga. Pub. Svc. Comm.*, 322 Ga. App. 687, 691 (745 SE2d 870) (2013) (citations and punctuation omitted).

4

The court may reverse the agency decision if the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-13-19 (h).

Thus, the court is statutorily required to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence, and is authorized to reverse or modify the agency decision upon a determination that the agency's application of the law to the facts is erroneous. A determination that the findings of fact are supported by evidence does not end judicial review of an administrative decision.

*Pruitt Corp.*, 284 Ga. at 161 (3) (footnote and punctuation omitted).

Central Georgia argues that we should overturn the Commission's order affirming and adopting the hearing officer's initial decision pursuant to OCGA § 50-13-19 (h) because it is (1) in violation of the Territorial Act; (2) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and (3)

5

arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

1. Central Georgia contends that the Commission erred in finding that the grandfather clause of the Territorial Act granted the City the right to serve the New Gym. Central Georgia's first argument is that the grandfather clause only grants the right to continue serving existing buildings or structures, and the grandfather clause does not apply because the New Gym is a new building. We disagree.

"The [Territorial] Act establishes a plan whereby every geographic area within the state is assigned to an electric supplier. Once a service territory is assigned, an electric supplier shall have the exclusive right to extend and continue furnishing service to any new premises within that area." *City of LaGrange v. Ga. Pub. Svc. Comm.*, 296 Ga. App. 615, 615-616 (675 SE2d 525) (2009) (footnotes and punctuation omitted). There is no dispute that the New Gym is located wholly within the geographic service area assigned to Central Georgia under the Territorial Act. Under the Territorial Act, with certain exceptions, an electric supplier has "the exclusive right to extend and continue furnishing service to new premises" within its "[a]ssigned area." OCGA § 46-3-3 (1). However, the City argued, and the Commission agreed, that it has the right to serve the New Gym under the Territorial

6

Act's "grandfather clause," OCGA § 46-3-8 (b), which states that "every electric supplier shall have the exclusive right to continue serving any premises lawfully served by it[.]" *See City of LaGrange*, 296 Ga. App. at 619 (1). The term "premises" is defined in OCGA § 46-3-3 (6) as

> the building, structure, or facility to which electricity is being or is to be furnished, provided that two or more buildings, structures, or facilities which are located on one tract or contiguous tracts of land and are utilized by one electric consumer shall together constitute one premises; provided, however, that any such building, structure, or facility shall not, together with any other building, structure, or facility, constitute one premises if the permanent service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure, or facility; provided, further, that an outdoor security light, or an outdoor sign requiring less than 2200 watts, shall not constitute a premises.

Central Georgia argues that the New Gym is a new building, and that the grandfather clause does not grant the right to serve new buildings, structures, or facilities, only the right to continue serving existing buildings, structures, or facilities. The hearing officer considered this argument and concluded that "the grandfather clause protects a 'premises' which can consist of two or more buildings, structures or facilities to which electricity is being or is to be furnished, and it does not matter that the New

7

Gym is a separate building." The hearing officer quoted from an earlier order by the Commission in a different case which stated that "under the grandfather clause of the Territorial Act, OCGA § 46-3-8 (b), the current electric supplier . . . retains the exclusive right to supply electricity for any and all expansions of existing premises already served by such supplier." The hearing officer decided that Central Georgia "is simply incorrect that the grandfather clause does not protect new buildings, structures or facilities where the same are expansions of existing premises already served by an electric supplier." Giving deference to the Commission on its interpretation of the Territorial Act, we agree with the hearing officer and the Commission that one premises can consist of multiple buildings, and that the grandfather clause can protect a new building if the new building is an expansion of existing premises already served by an electric supplier.

2. Central Georgia next argues that the Commission committed legal error and abused its discretion by concluding that the New Gym is an expansion of the existing high school classroom building. We disagree.

The hearing officer stated that the "Commission has applied the grandfather clause to a number of cases over the years where the original facility served by an electric supplier has been expanded" and that, in determining whether a disputed

8

expansion is a separate premises, the Commission has taken a functional approach in analyzing the evidence, considering "several factors including: (a) whether the two facilities are connected; (b) whether they serve similar purposes; (c) whether they share common electrical systems; and (d) whether they are separately metered and the charges for electric service are calculated independently."

The hearing officer found that the New Gym is physically attached to the existing Jackson High School facility and that the New Gym and the existing facility serve similar purposes. The hearing officer also found that the New Gym, as originally designed, would have been served by the City through the same single metering arrangement serving the existing high school and that they would have shared a common electrical system, but that during construction of the New Gym, a construction change directive was issued to provide for service from a different power company. The hearing officer concluded that this was not a factor that could be held against the City, because without the change in electrical design to accommodate the change in electrical providers, the New Gym would share a common electrical system with the remaining Jackson High School facility.

In analyzing whether the New Gym is separately metered and charges for electric service are calculated independently, the hearing officer found that

9

[w]ith the exception of the New Gym, the City has always served the existing buildings at the Jackson High School facility through the same single metering arrangement beginning in the late 1980s. The original design of the New Gym show[s] that it was to have been served by the City through the same single metering arrangement through which the City serves the original high school . . . and would share a common electrical system with those existing buildings. Changes made during the construction toward an[ ] alternative electric supplier . . . altered that design. The only reason that there is a separate meter for the New Gym is because of the decision of the Butts County Board of Education to choose [Central Georgia] to serve the New Gym. And in situations where the electric customer has chosen a different electric provider for a disputed expansion, resulting in separate metering of the disputed expansion, the Commission has consistently refused to rely on the number of meters as the single dividing factor in deciding cases under the "grandfather clause" in the Act.

(Citations omitted).

Central Georgia argues that where the buildings and structures of a facility historically have been separately metered, a new building at the same site cannot be considered an expansion of the existing facility. Central Georgia argues that the guard shack and the trailers that were removed prior to the construction of the New Gym were separately metered and the charges for service were calculated independently of one another and of the service provided to the high school's classroom building,

10

and that this historical separate metering precludes treating a new building at the same site as an expansion of the existing premises. The hearing officer considered Central Georgia's arguments, but determined that although the guard shack and each of the six temporary trailers would have been separate premises, the singly metered existing high school facility also constituted a separate premises. When the New Gym was constructed, the guard shack and the temporary trailers had been removed and there were no structures on the Jackson High School campus that were separately metered. Consequently, at the time the New Gym was constructed, the singly metered high school facility was the only premises that existed on the Jackson High School campus.

The hearing officer found that other persuasive evidence exists that the New Gym is an expansion of the existing high school facility and not a separate premises, including that power bills for both the New Gym and for the existing high school facility are sent to and paid by the Butts County Board of Education, that the New Gym and the existing high school facility are served by the City with water service through a single meter, and that they share a sewer system and a common gas feed.

The hearing officer concluded that the New Gym is a part of the Jackson High School premises and that the City has the exclusive right under the grandfather clause

11

to serve the New Gym. The Commission approved and adopted the hearing officer's initial decision, and the Superior Court of Fulton County affirmed the decision of the Commission. We find that the Commission's findings of fact are supported by the evidence and that the Commission's conclusions of law based on those findings are sound. Furthermore, we find that the Commission's decision was not in violation of the Territorial Act; was not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and was not arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Accordingly, the trial court did not err in affirming the Commission's decision.

*Judgment affirmed. Doyle, P. J., and Brown, J., concur*.