**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 16, 2023**

# In the Court of Appeals of Georgia

A23A0746.  WALTON  ELECTRIC  MEMBERSHIP CORPORATION et al v. GEORGIA POWER COMPANY.

MILLER, Presiding Judge.

This appeal concerns whether Georgia Power has the exclusive right, under the Georgia Territorial Electric Service Act (OCGA § 46-3-1 et seq.), to continue providing electric service for premises operated by Nestlé Purina Petcare Company. The Georgia Public Service Commission determined that Nestlé had destroyed or dismantled the premises, that a new premises existed, and that Nestlé could therefore switch to a different provider, Walton Electric Membership Corporation. The superior court reversed, and Walton Electric and Nestlé now challenge this reversal on appeal. The appellants argue that (1) the superior court erred when it substituted the Commission's findings of fact for its own; (2) the superior court erred in its

interpretation of the statutory language of the Territorial Act; (3) the superior court erred in finding that the premises were reconstructed in substantial kind; and (4) the superior court erred in finding that Georgia Power's temporary supply of electricity during the reconstruction prevented Nestlé from selecting a different provider.[1] Because the superior court properly reversed the Commission's decision, we affirm.

"Judicial review of an administrative decision requires the court to determine that the findings of fact are supported by 'any evidence' and to examine the soundness of the conclusions of law that are based upon the findings of fact." (Citation omitted.) *Central Ga. Electric Membership Corp. v. Pub. Svc. Comm.*, 351 Ga. App. 69, 71 (830 SE2d 459) (2019). "When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency. This Court reviews legal conclusions de novo." (Citations omitted.) *Hudson v. Butler*, 337 Ga. App. 207 (786 SE2d 879) (2016).

The premises was originally constructed in 1991, in Hartwell, Georgia, in an electric territory assigned to Georgia Power, and Georgia Power has serviced the

___

[1] The Office of the Attorney General has also submitted an appellant's brief on behalf of the Commission, arguing that the superior court's decision should be reversed on the same bases advanced by Nestlé and Walton Electric.

premises since that time. The initial facility consisted of a warehouse and manufacturing facility, and it was used to manufacture towels. A subsequent owner added a weaving plant to the premises and expanded the manufacturing space to 554,955 square feet. Nestlé purchased the premises in 2017 and began preparing it for use as a pet food processing facility. The company proceeded to make a series of modifications while Georgia Power continued to provide electricity to the facility. In 2019, Nestlé executed a letter of intent, selecting Walton Electric to replace Georgia Power as its service provider. Georgia Power filed a complaint with the Commission, claiming that it was entitled to continue providing electric service to the premises under the grandfather clause in the Territorial Act (OCGA § 46-3-8 (b)).

A hearing officer determined that Nestlé had made "substantial modifications" to the premises, and as such, Nestlé had destroyed or dismantled the premises under the Territorial Act, allowing it to choose a new provider. The hearing officer summarized that Nestlé had replaced the electrical system and infrastructure; replaced 30% of the flooring and foundation in its food processing area; removed concrete slabs in the weave room; changed the foundation in the old bleachery; removed the roof above the old bleachery, the old tank building, and some of the distribution center; demolished the old filter press' structural piers; removed air washing pits and

3

demolished an old crane system; "swallowed" up the old ventilation tunnels and "some" walls; and replaced the old air pellum. The officer further found that Nestlé had demolished some interior walls, made openings in other walls, and enclosed some walls with a new building. The hearing officer then determined that the premises were reconstructed "not in substantial kind" as the previous facility. The Commission affirmed and adopted the hearing officer's decision in its entirety, and Georgia Power applied for judicial review in the Fulton County Superior Court.

Following a hearing, the superior court reversed the Commission's decision. In a thorough and detailed order, the court determined that (1) Nestlé had not destroyed or dismantled the premises for purposes of the Territorial Act; (2) the structural additions made to the premises did not qualify the premises as new; and (3) even assuming that Nestlé had dismantled the premises, the premises were reconstructed in substantial kind because the purpose and layout of the premises had remained largely the same. Nestlé and Walton Electric now jointly appeal.

1. First, in two related claims, the appellants argue that (1) the superior court erroneously determined that a dismantling or destruction of the premises required "wholesale obliteration" of the premises; and (2) the superior court erred by substituting the Commission's findings for its own when it determined that Nestlé had

4

merely renovated or added to the premises. We determine that the superior court properly interpreted the Territorial Act in reversing the Commission's decision and that the court did not substitute the Commission's findings for its own.

"The [T]erritorial [A]ct establishes a plan whereby every geographic area within the state is assigned to an electric supplier. Once a service territory is assigned, an electric supplier shall have the exclusive right to extend and continue furnishing service to any new premises within that area." (Citation and punctuation omitted.) *Sawnee Elec. Membership Corp. v. Ga. Pub. Svc. Comm.*, 273 Ga. 702, 703 (544 SE2d 158) (2001). "This legislation was intended to minimize the duplication of electrical facilities in a geographic area for the public benefit." *Sumter Elec. Membership Corp. v. Ga. Power Co.*, 286 Ga. 605, 607 (690 SE2d 607) (2010). The Act contains a large-load customer choice provision which "allows a consumer to choose an electric supplier different from the one assigned, where service is furnished to one or more new premises . . . if utilized by one consumer and having single-metered service and a connected load which, at the time of initial full operation of the premises, is 900 kilowatts or greater." *Sawnee*, supra, 273 Ga. at 702 (citing OCGA § 46-3-8 (a)). The large-load provision, however, is subject to a grandfather clause, which allows the previous electric supplier "to continue serving newly created

5

premises[,]"[2] except "where a premises has been destroyed or dismantled and not reconstructed in substantial kind." *Excelsior Elec. Membership Corp. v. Ga. Pub. Svc. Comm.*, 322 Ga. App. 687, 692 (2) (745 SE2d 870) (2013) (citing OCGA § 46-3-8 (b)). See also *City of LaGrange v. Ga. Power Co.*, 185 Ga. App. 60, 61 (363 SE2d 286) (1987) (the grandfather clause provides "for an exception to the [large-load] customer-choice provision when the customer's premises has been lawfully served previously by a provider pursuant to the Act").

The Supreme Court of Georgia has cautioned that "legislative exceptions in statutes are to be strictly construed and should be applied only so far as their language fairly warrants. All doubts should be resolved in favor of the general statutory rule, rather than in favor of the exemption." (Citation and punctuation omitted.) *Sawnee*, supra, 273 Ga. at 704. See also *Jackson Elec. Membership Corp. v. Ga. Pub. Svc. Comm.*, 294 Ga. App. 253, 258 (3) (668 SE2d 867) (2008) (the large-load exception, which is an exception to the general rule of competitive restriction, "must be narrowly construed"). And, we note that "[a]lthough the [Commission's] interpretation of an

---

[2] "The clause gives suppliers the right to continue serving any premises lawfully served by it on March 29, 1973 or thereafter[,]" subject to four exceptions, including the exception at issue in this case. *Excelsior*, supra, 322 Ga. App. at 692 (2).

6

act is entitled to great deference, this case does not involve interpretation of a technical question necessary to the administration of a law. It simply requires a judicial determination as to whether the [Commission] correctly interpreted the plain meaning of the statute." *Sumter*, supra, 286 Ga. at 607.

Turning now to the statutory terms at issue in the present appeal, the Territorial Act defines "premises" in part as the "building, structure or facility to which electricity is being or is to be furnished[.]" OCGA § 46-3-3 (6). The Act does not define "dismantle" or "destroy," but the superior court accepted the Commission's definition of "dismantle" as to "take apart" or to "disassemble," and the court also accepted the Commission's definition of "destroy" as to "ruin completely."

When we construe OCGA § 46-3-8 (b) strictly and narrowly, as required by law, we agree with the superior court's ruling that to foreclose the application of the grandfather clause in this case, Nestlé would have had to "take apart," "disassemble," or cause "complete[] ruin" to the buildings, structures, or facilities in a wholistic rather than partial manner. The statutory exception itself speaks to a *reconstruction* of the premises, which naturally contemplates the premises as a whole, and there is nothing in the plain language of the statute suggesting that a partial reconstruction of a premises is sufficient to prevent the application of the grandfather clause. See, e.g.,

7

*Sumter*, supra, 286 Ga. at 607 (interpreting a provision in the Territorial Act "by considering the entire statute"); *Funvestment Group, LLC v. Crittenden*, 364 Ga. App. 447, 454 (1) (b) (ii) (875 SE2d 436) (2022) (explaining that this Court cannot "add a line to the law" and that "the General Assembly does not enact a general intention; it enacts statutes; that statutes have words, which have meanings; and that it is those meanings that we interpret and apply, not some amorphous general intention") (citations and punctuation omitted).

Moreover, if we were to hold that a consumer could choose an alternative provider under OCGA § 46-3-8 (b) by merely modifying portions or large parts of the premises, we "would frustrate the legislative intent of the territorial act — restraining competition for the benefit of the public in minimization of duplication of facilities and prevention of other adverse economic and environmental effects[.]" (Citation and punctuation omitted.) *Sawnee*, supra, 273 Ga. at 706. In this case, the hearing officer found that the premises had been "substantially modified," and she made no factual determination that the premises as a whole had been taken apart or disassembled. Thus, the findings denote a partial, rather than wholistic modification of the premises, and the superior court was therefore correct in its conclusion that the premises had

8

not been dismantled or destroyed so as to trigger the exception embodied in OCGA § 46-3-8 (b).[3] Cf. *Central Ga. Elec. Membership Corp.*, supra, 351 Ga. App. at 73 (1) (additions to an existing premises do not render the premises new).

2. We further reject the appellants' contention that the superior court substituted its own factual findings for that of the Commission.

Although the judiciary accepts the findings of fact of an administrative agency if there is any evidence to support them, "the court is statutorily required to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence, and is authorized to reverse or modify the agency decision upon a determination that the agency's application of the law to the facts is erroneous." *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 161 (3) (664 SE2d 223) (2008).

We observe that the superior court characterized the changes to the premises as "renovations" and that the court noted that Nestlé had made "structural additions"

---

[3] Because the superior court was correct on this point, we do not analyze whether the court properly determined that the premises were "reconstructed in substantial kind." The appellants also enumerate as error the superior court's finding that the premises could not have been in complete ruin because Georgia Power continued to supply electricity to the premises while work was being performed. This is a moot point, however, because the hearing officer did not find that the premises were completely ruined.

to the premises. But, when we examine the entirety of the superior court's order, we find no evidence of the court substituting its findings for that of the Commission. On the contrary, the superior court accepted the findings as to each modification that Nestlé made to the premises, and the court explicitly determined that these findings were "clearly supported by the evidence." The superior court then recited the modifications but nevertheless found that the Commission had erred in its legal conclusion that the modifications amounted to a dismantling or destruction of the premises and rendered the premises new. Accordingly, the superior court complied with its duty to examine the soundness of the Commission's legal conclusions as applied to the facts of this case, and we affirm the superior court's reversal of the Commission's decision.

*Judgment affirmed. Mercier, C. J., and Hodges, J., concur*.